HOLST et al. v. SAVANNAH ELECTRIC CO. et al.

(Circuit Court, S. D. Georgia, E. D. July 16, 1904.)

1. MUNICIPAL CORPORATIONS—POWERS OF COUNCIL—GRANTING OF STREET FRANCHISE BY RESOLUTION.

The mayor and council of the city of Savannah, Ga., are authorized by the city's charter (MacDonell's Code, p. 12, § 32) to make, ordain, and establish "by-laws, ordinances, rules and regulations," but nowhere, in terms, to legislate by resolution; and in view of cognate provisions requiring the improvement of streets, regulating the speed of street cars, etc., to be by ordinance, and of section 44, which provides that the city may either build street railways, "or let or farm the privilege to individuals or companies under the conditions and at such rates of fare and other charges as the city council of said city may by ordinance determine," the mayor and council have no power to grant a franchise to a street railroad company to occupy a street with its tracks by a resolution, and such a resolution passed without notice to owners of property on the street affected, and without prior publication as required by the charter in case of ordinances, is void and confers on the company no right or authority.

2. CONSTITUTIONAL LAW—TAKING PROPERTY WITHOUT COMPENSATION.

The owners of property fronting on a street may maintain a suit in equity in a federal court against the city and a street railroad company,

both of which are corporations of the state, to enjoin the laying of tracks in the street under a void enactment by the city council purporting to authorize such act, where irreparable injury will result to their property, as a taking of property under color of authority from the state without due process of law.

3. EQUITY JURISDICTION—PREVENTING MULTIPLICITY OF SUITS—ADEQUATE REMEDY AT LAW.

Such suit is within the jurisdiction of equity, where the complainants are numerous, on the ground that it will prevent a multiplicity of actions, and for the further reason that there is no adequate remedy at law.

4. INJUNCTION—USE OF STREET—STREET RAILWAY.

For a municipal corporation, over the protest of every abutting lot owner on a residence street, to refuse them a hearing, and grant in secret caucus to a street railway the right to appropriate said street for its track, to be used to shunt all the empty cars in use in the city into the car barns at midnight and to distribute them at dawn, thus destroying the quiet, repose, and comfort of many homes, when the railway has a parallel track one block away, long used, and ample for such purpose, is unnecessary, unreasonable, and oppressive municipal action, and should be enjoined by a court of equity having jurisdiction.

In Equity. On motion for preliminary injunction.

The complainants before the court are J. B. Holst, A. J. Ives, Lena Anderson Myers, J. J. Cummings, R. P. Lovell, Mary Ganahl Stovall, Henrietta Seabrook, Sarah O. Adams, all of whom are citizens of the county of Chatham, state of Georgia, and Emma L. Carrington, who is a citizen of New York, and resident on Long Island. The respondents are the mayor and aldermen of the city of Savannah and the Savannah Electric Company. The bill is brought in behalf of the complainants and other property owners whose interests are also affected. These, with the complainants, are 42 in number, and include, without exception, every owner of a lot abutting on that portion of the street involved in the controversy, and which, as will be seen, the mayor and aldermen of Savannah have resolved that the electric company may appropriate in part for its own uses. The bill alleges the additional value of their homes resulting from the quiet of the street and its freedom from cars and other disturbing noises; that the Electric Company, without first offering to pay compensation in any amount, is proceeding to erect poles, string wires, and lay tracks under pretended authority passed by the mayor and aldermen of the city near the hour of midnight on the 25th of May, 1904; that this was done without any notice whatever being given to the public of such intended action; that the resolution was read but once, the law requiring that all ordinances and resolutions, to become laws, shall be read twice, and published for two weeks in the public gazette; that the resolution is illegal and void; and that the Savannah Electric Company acquired no right thereunder. It is further alleged that the fact that the mayor and aldermen were considering the grant to the electric company of the right to thus use the street was purposely kept secret for the purpose of preventing plaintiffs and other property owners affected, from protesting against the resolution, but, anticipating a movement of this character, the plaintiffs and 59 other property owners and residents had petitioned, in writing, the mayor and aldermen of the city to permit them to be heard whenever the petition of the electric company should be presented to the body for action. This request, it is charged, was ignored and utterly disregarded, although they were assured by the mayor of the city of Savannah that they would be given ample opportunity to be heard. In this petition it is further alleged that the complainants notified the governing body of the city that to grant such resolution would cause irreparable damage to them and other owners of property and residents on said street. Notwithstanding this, the mayor and aldermen of the city immediately proceeded to grant and did grant the electric company the right to lay its tracks, string its wires, erect its poles, and operate its cars on said street. This, it is charged, will deprive plaintiffs of their property rights without due process of law, in contravention of the Constitution of the United States, and without compensa-

tion having been first paid, as required by the Constitution of Georgia. Special averments of damage allege that J. B. Holst will be prevented from using the street in front of his property, and that the same will be damaged in at least the sum of $3,000. The property of A. J. Ives, Lena Anderson Myers, J. J. Cummings, R. P. Lovell, and Mary G. Stovall, it is alleged, will be damaged, each, in the sum of $2,000. The property of Henrietta Seabrook, it is alleged, will be damaged in a large sum, as will also the property of Sarah O. Adams. Mrs. Carrington, the New York complainant, who also owns an abutting lot, lays her damages in the amount of $2,500. It is further alleged that the appropriation of this portion of Gwinnett street is wholly and entirely unnecessary for the public convenience, benefit, or necessity, and is entirely for the convenience of the Savannah Electric Company, a corporation which already owns all the street railways in the city of Savannah. It is alleged to be unnecessary and unreasonable, because the electric company already has a line on which its cars are operated now on Bolton street, which is the next street south of Gwinnett, and parallels the same, and which can be used by the corporation for its purpose just as conveniently as Gwinnett street. This purpose is to run its empty passenger cars into its car barn at night, and to distribute them in the morning. It is charged that the Savannah Electric Company, within a few hours after the passage of the resolution, and before the public had become aware of its passage, had commenced the work of laying its track, erecting its poles, and stringing its wires, and, if permitted to continue with this work, and operate its cars on the track thus laid, that plaintiffs will suffer irreparable injury therefrom, and that this injury will be inflicted unless prevented by a suitable order in equity. All of this conduct, it is charged, is in contravention of the relating provisions of the Constitution of the United States. It is alleged that the Savannah Electric Company is chartered by the state of Georgia; that the mayor and aldermen of the city of Savannah, acting under assumed authority from the state of Georgia, and as an agent of the state for governmental purposes, has availed itself of the governmental agencies furnished by the state to unlawfully grant authority to do the unlawful acts complained of, and that the action of both defendants is therefore the action of the state, and that their conduct under color of its pretended authority is to deprive orators of their property without due process of law. Waiving answer under oath, the complainants pray an injunction pendente lite to restrain the defendants from doing or continuing to do the wrongful acts complained of. There is also a prayer for general relief.

In response to the rule to show cause, the defendant the Savannah Electric Company alleges that the court has no jurisdiction; that there is no equity in the bill; that no federal question is involved in the bill; that it states no cause of action, and makes no case for injunction or other relief; and that the complainants have adequate remedy at law. It denies that complainants will be damaged in any manner whatever, "cognizable by the Constitution and laws of the state of Georgia," by the construction of the proposed tracks. It avers that everything was done by itself and the mayor and aldermen of Savannah in the utmost good faith, and to locate a greatly needed public improvement. It alleges that the kind of cars it proposes to run over that portion of Gwinnett are ordinary street passenger cars, making only such stops as are necessary for the purpose of receiving and discharging passengers; that this will put no additional servitude upon said street; that their scheme is a necessary part of a plan agreed upon between the mayor and aldermen of the city of Savannah and Atlantic Coast Line Railroad and the defendant to build a subway beneath the Atlantic Coast Line Railroad at Gwinnett street crossing in Savannah. Defendant points out the great danger to which passengers are subjected by the grade crossing over the Atlantic Coast Line Railroad, and alleges its intention to abandon the line of street railroad on Bolton street, so that defendant's cars, instead of running upon Bolton street, thereby passing over the grade crossing, will be run upon Gwinnett street, and pass under instead of over the railroad, thus obviating the delay and inconvenience to which the public is put by reason of stopping for passing trains, and obviating, also, great peril and danger which passengers incur from passing trains; that, by reason of this arrangement, it will be necessary to take up tracks of the defendant on Bolton street, and, as part and condition of entering into the

subway agreement, the city assented to this defendant laying a single track between Habersham and Abercorn streets, with proper connections between the two streets, it being necessary that the defendant should have this for the purpose of connecting its line of street railroad on Habersham street with its line of street railway on Abercorn street, this being the only convenient and accessible line with which defendant's said connections can be made. Defendant alleges that Gwinnett street is a public street of the city of Savannah; that the title is in the state of Georgia and in the mayor and aldermen of the city of Savannah; that abutting property owners have no rights thereon, other than the easement enjoyed by the general public; that the building of defendant's proposed line of street railway thereon will not impair this easement, damage complainants' property, or place any additional servitude upon said street. Defendant alleges that the charter granted it by the state of Georgia and the permission given by the resolution of the mayor and council of the city of Savannah were given subject to the right of all persons to receive just compensation for any private property taken or damaged, and the defendant expressly disclaims any right under said resolution or said charter to take or damage the property of any of the complainants in the manner contemplated by the Constitution of the state of Georgia without making just and adequate compensation therefor. Defendant admits that if, by the laying of the tracks and operation of its cars on Gwinnett street, the lots of complainants will be damaged in the manner contemplated by the Constitution of the state of Georgia and the decisions of the courts of last resort in that state, the defendant will have to make them just and adequate compensation therefor, and expressly disclaims any right under said resolution to take or damage any of the property of complainants in said manner without first making just compensation.

The answer of the city of Savannah is in substantial respects the same as that of the Savannah Electric Company. It is, however, admitted in the answer that the resolutions granting the electric company the right to lay its tracks on the disputed portion of Gwinnett street were adopted without any notice being given to the public of such intended action, and that the resolutions were read but once at said meeting; it being averred that no notice whatever is required to be given to the public of any resolution before council. It denies that the proceeding was purposely kept secret for the purpose of preventing the complainants and other property owners from protesting against the passage of such resolution, but admits that the complainants and a number of other property owners and residents on the portion of Gwinnett street in dispute requested, in writing, that the mayor and aldermen of the city of Savannah would give them a hearing upon the matter. It denies that this request was ignored and disregarded. On the contrary, it states that the petition of the property owners was "received as information." It alleges that, in the "committee of the whole" of said meeting, hearing was given counsel representing the Gwinnett street property owners and residents, Mr. William P. Hardee, and that said hearing was full on all points—said attorney of said property owners stating their objections just as fully as they could have done themselves—and that council accorded him a patient and respectful hearing. Denying the allegations in complainants' bill that the laying of the track in question and the operating of street cars on that portion of Gwinnett street are unnecessary for the public convenience, benefit, and necessity, and that said improvement is made entirely for the convenience of the Savannah Electric Company, it admits that said company does own all the street railways of the city of Savannah, and that it now has a line on Bolton street, which is a narrower street than Gwinnett, which street is next south of Gwinnett, and parallel to the same; that said city denies that said street can be used by said street railway company for every purpose just as conveniently, so far as the public is concerned, as Gwinnett street. It alleges that the damages of complainants, if any, are not irreparable, but are easily computable; "it being merely a question of dollars and cents, without any sentimental, whimsical, or archaic measure of damages being considered." The tenth paragraph of the answer alleges that the conclusions of complainants in the relative paragraph of their bill are conclusions of law, and "manifestly erroneous conclusions at that, the same being in the teeth of the decisions of the Supreme Court of the

United States and the Supreme Court of Georgia on the subject." It contends the acts done by it and the electric company are done in the proper exercise of lawful powers, and, since they do not directly encroach upon private property, even if the consequences of such acts should damage and depreciate the value of abutting property, are universally held not to be a "taking" under the constitutional provisions. There has been here, the answer states, no direct physical disturbance of any right, either public or private, which complainants enjoy in connection with their respective properties. But even if such be the case, respondents allege that the courts can grant no relief, provided there is no physical interference with the right or easement of said property owners to egress from and ingress to their lots along said street. As to whether or not said railway track should be upon Gwinnett street, or upon Bolton street, or upon any other street, the city council of Savannah, in its best judgment and discretion, is vested with the responsibility of determining the same, and the courts are relieved from such responsibility, and have no right to interfere therewith.

J. F. Cann and Walter G. Charlton, for complainants.

W. W. Osborne and Alexander A. Lawrence, for defendant Savannah Electric Co.

William Garrard, City Atty., for defendant mayor and aldermen of city of Savannah.

SPEER, District Judge (after stating the facts). That portion of Gwinnett street in the city of Savannah which is involved in the controversy before the court is what is termed a "residence street." On either side are the homes, all comfortable and many spacious and elegant, of well to do people. It is made clear that this locality was selected for homes by the class of residents who own the abutting lots because of its quietude and repose. The Savannah Electric Company enjoys a monopoly of street railway traffic in that city, and has long evinced a desire to lay its tracks on this portion of Gwinnett street. The parties complainant, the owners of residences thereon, have consistently and earnestly objected. They have contended that it would largely impair the comfort, the quiet, accessibility, and therefore the value, of their homes. They have also contended that the appropriation of the street by the electric company is unnecessary, for a short block to the southward the same street railway company already owns and controls a line on Bolton street parallel to Gwinnett; and this track, it is insisted, is ample for all purposes of the street railway service of Savannah. Previous to the occurrences of which complaint is now made, the mayor and aldermen of the city of Savannah have accorded a hearing to the property owners on this street whenever the electric company sought authority to lay its tracks thereon. It is now, as appears from the foregoing statement, alleged that such a hearing was promised, but was unlawfully and injuriously denied; that the action of the city government is unlawful and void; that no lawful grant of power to the electric company to appropriate the street in question has been or can be made; that the electric company appears on the street as an intruder; and that the present action of the city council and the electric company, both creatures of the state, and jointly acting under its assumed authority, is obnoxious to that clause of the Constitution which declares:

"No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, nor shall any state deprive

any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the law."

The answer of the city, with unequivocal and perhaps temperamental emphasis of the pleader's language, presents certain important legal questions which may properly be considered before we approach the consideration of the facts. They are, first, that the act done by the electric company is done in the proper exercise of lawful powers; second, that it does not directly encroach upon private property, and, even if the consequences of such act should damage and depreciate the value of abutting property, that it is not a taking of the complainants' property, under the constitutional view, and the court therefore can grant no relief; and that whether the railway tracks should be upon Gwinnett street, or upon Bolton street, or upon any other street, is a matter stated to be, in substance, in the arbitrary judgment of the city council of Savannah, and the courts have "no right to interfere therewith."

It may be observed that there is involved in this case, and perhaps in every case, not the right, but the duty, of the court. The rights of parties are at stake. It may be further added that if, upon judicial consideration, it may be determined by the court, even though erroneously, that it is a duty to arrest the acts complained of, and, for the protection of the rights of complainants, to stay the joint action of the city and the electric company, such action can in no proper sense be termed "interference." The action of the court is invoked in the usual manner. Its attention to the cause of complainants is obligatory, and here, at least, their complaint will be heard.

In the first place, we inquire, was the effort of the electric company to seize the portion of Gwinnett street in controversy lawful, or, to use the language of the answer, "in the exercise of lawful powers," or was it rather an effort on the part of that corporation, aided and abetted by the city council, to obtain an unconscionable advantage, with that disregard of private rights on the part of such corporations for which it is so frequently the duty of courts to afford redress? The facts relating to this inquiry do not appear to be in conflict. The affidavits make it clear that the electric company was well aware of the earnest objections of the property owners to its project. The previous effort of the company to appropriate this street, and its defeat before the city council by the protest and argument of the property owners, is conceded on all hands. With regard to the present movement, Mr. Edward Karow testifies by affidavit that some months ago it was rumored that the Savannah Electric Company would make another effort to secure permission to use this portion of Gwinnett street; and some of the property owners, in behalf of themselves and the others, informed the president of the electric company that objection would be made to the granting of the petition. This is not controverted. The city authorities were also apprised of a unanimous protest on the part of a large and highly respectable number of its property holders and taxpayers. Not only is this true, but the city had promised to give them a public hearing. Mr. A. J. Ives, a lot holder in the territory affected, and owner of a home on which he had spent many thousands of dollars, testifies that he had heard of the impending movement of

the electric company and he gave to another lot owner, Mr. W. P. Hardee, the information, and requested him to prepare a protest. He also called upon the mayor and notified him of the grave objection of the lot owners, when that gentleman assured him, before any action was taken, that they should be accorded a full and public hearing. This affidavit is corroborated by the affidavits of W. P. Hardee, J. B. Holst, and Edward Karow. Mr. Holst was also informed by Mr. Ives that he had seen the mayor, and had received his promise that ample opportunity would be given the property owners and residents on Gwinnett street to be publicly heard in protest, in the event the petition to appropriate the street should be presented by the Savannah Electric Company. Mr. Karow was present at the time Mr. Ives made this statement. Holst and Karow both agreed that it would be well to see the mayor, that there might be no mistake or misunderstanding about the matter. They at once had an interview with the mayor, and were then and there assured by him that opportunity would be granted to the property owners affected to have a public hearing. The mayor himself testified, and his affidavit is before the court. He does not offer to controvert in any way the truthfulness of these depositions by Ives, by Holst, and by Karow. It is true, he contends that the property owners were given a full hearing. It is proper to inquire if the mayor is correct in this view. Mr. W. P. Hardee testifies that he is a resident and property owner; that his home is on the north side of Gwinnett street, between Lincoln and Abercorn. Having heard of the rumors of the contemplated movement he prepared the protest and request to be heard. It was signed by 42 property owners and residents along the line of said proposed extension. On Wednesday, May 25, 1904, about 4 o'clock in the afternoon, he was advised by one of the signers that an effort by the electric company would probably be made at the meeting of council that night to obtain permission to lay its tracks on that portion of Gwinnett street on which he lived. At 8 o'clock in the evening he repaired to the council chamber. While there, W. W. Osborne, Esq., attorney for the electric company, handed to the assistant clerk of council a paper stating that it was a petition for the electric company to lay its tracks on Gwinnett street, and asked that it be filed and sent in to council. It will afterwards appear that the municipal legislature was in secret caucus or executive session, euphemistically termed in its rules the "committee of the whole." Shortly afterward, deponent handed the assistant clerk of council his protest, and requested that it be sent in to council. Then Mr. Osborne, attorney as aforesaid, left the room, with the clerk of council, and was absent some minutes, and returned. A short time after his return the clerk asked deponent to come before the caucus and prefer his request for a public hearing. This the deponent did, then left the caucus, and waited until the mayor and aldermen emerged from their secret session and convened in the public council chamber. Deponent entered the council chamber, and remained there until the clerk of council read a brief of the petition presented by the Savannah Electric Company, handing the same to the mayor. That gentleman remarked, "Received as information." A few minutes later the clerk of council read a brief of the protest and request for hearing, and handed the same to the

mayor, who again remarked, "Received as information." Deponent waited in council chamber until about 11 o'clock p. m., and, council in the meantime having passed to other business, he concluded nothing further would be done, and went home. That something had been already done is made manifest by the affidavit of the mayor himself. He testifies that before the council convened, and while the body was still in what seems the potential "committee of the whole," they had already adopted the resolution authorizing the electric company to lay its track on the street. In that secret caucus, the deliberations, if any there were, were conducted, and the conclusion reached. The singularity of a proceeding which will permanently affect the property of so many citizens of Savannah and their constitutional rights will not escape the attention of the observant. Mr. Osborne was first called before the caucus, or perhaps he had the entrée into what John Randolph might have termed this "cave of Trophonius." It also will not escape attention that Mr. Hardee was not permitted to appear while Mr. Osborne was in the presence of the conclave. After Mr. Osborne left, Mr. Hardee was summoned. The sententious observation made by the mayor, when afterwards, in the council chamber, the briefs of the electric company's petition and the protestants' protest and request for hearing were presented, is also noteworthy. As each paper was received from the clerk of council, the mayor exclaimed, "Received as information." Since the "committee of the whole," as appears from its resolution in the record, had conclusively determined the matter, it is difficult to see what further information the council would require. The remark of the mayor, however, could have no other effect than to lead Mr. Hardee to conclude that the matter was still pending; that information on the subject was yet valuable to the council; and that he and those acting with him would be accorded the hearing which he appeared to ask. That the electric company had all the information necessary is perhaps manifested by the fact that shortly after 5 o'clock next morning it is posting "with quick dexterity" to lay its track, and to appropriate for its purposes the unappropriated portion of Gwinnett street.

The contention of the city that complainants were heard before council is based upon the following statement to be found in the affidavit of Mr. Myers, the mayor:

"Two years ago the Savannah Electric Company petitioned council for consent to lay their track on the portion of Gwinnett street involved in the above-named case. The lot owners on the street filed a protest, and council heard the same, and did not grant the request. At that time they had a public hearing, and heard all the argument. At the present time there is a new council, but nearly all the members of the present council were members of the old council, and had formerly heard the arguments advanced."

Assuming, under the law, that the complainants are entitled to an opportunity to be heard upon a matter affecting their rights of property, this proposition of the mayor does not appear to be maintainable. The fact that an adjudication on the same matter and on the same facts had been previously made by the same council now contemplating a change of mind, instead of precluding a hearing, would give a stronger claim to that settled right under popular government. So plain is this that

such a proceeding in a tribunal governed by law is termed a "rehearing." The mayor, however, himself contends that the facts were not the same. Indeed, he contends that the permission was granted because the facts were different. Nor was the council the same. Nor is it true that Mr. Hardee appeared as attorney for the lot holders, or to make the showing against the resolution for them. He had not been employed as attorney, and his appearance was in propria persona merely for the purpose of asking a hearing for himself and the others at an appropriate time to be fixed by council. If this request was passed upon at all, council gave him no information of the fact, but, on the contrary, by receiving his petition "as information," impliedly confirmed the express promise of the mayor that a hearing would be accorded the complainants and those having rights in common with them.

It will be observed that the authority to the electric company to lay its track on Gwinnett street was granted by resolution of the "committee of the whole." This we have seen to be a secret session of the council, from which the public is excluded. It, however, appears that the resolution, late at night, was approved by council. A certified copy of the resolution is in evidence, and this constitutes the sole authority upon which the electric company is proceeding. It begins:

"By the Committee of the Whole: Resolved, by the mayor and aldermen of the city of Savannah, in council assembled, that permission is hereby granted to the Savannah Electric Company," etc.

In the final clause there is this proviso and condition:

"That the said Savannah Electric Company, at its own cost, shall pave between its tracks and five feet on either side thereof, with vitrified brick under the direction of the director of public works, at the intersection of Abercorn and Gwinnett streets, covering the proposed switch there; likewise at the curve at Atlantic and Gwinnett streets, and at the two curves at Atlantic and Bolton streets, also at the two curves at Gwinnett and Ott streets, and at the two curves at Bolton and Ott streets, also at the reverse curve at Gwinnett street and Waters avenue. All of the foregoing paving with brick to be done within thirty days after each of said pieces of work shall have been done."

A careful consideration of the charter of Savannah and various provisions of the city code is convincing that the powers to farm out or donate the streets for railway purposes as herein sought to be done cannot be exercised by resolution. It is well settled that the powers granted a municipal corporation, particularly where they affect private rights, must be strictly construed, and the method marked out by law for giving effect to such powers must be as strictly followed. In 1 Dillon on Municipal Corporations (4th Ed.) 309, it is declared that, when the mode of enacting ordinances is prescribed, it must be pursued. This is supported by many authorities. 20 Am. & Eng. Ency. Law, 1142. In clause 32 of the charter of Savannah (MacDonell's Code, p. 12), it is provided:

"The mayor and aldermen of said city shall have power and authority from time to time to make, ordain and establish such by-laws, ordinances, rules and regulations as shall appear to them requisite and necessary for the security, welfare and convenience of said city and its inhabitants, and for preserving health, peace and good order within the limits of the same."

By-laws are rules and ordinances made by a corporation for its own government. 1 Bouvier, p. 274. While the terms "ordinances" and "by-laws" are sometimes used interchangeably, it cannot, we think, be contended that the resolution under consideration is a by-law. "The term 'ordinance,'" said Judge Dillon (1 Municipal Corporations, par. 307), "in this country, is limited in its application to the acts or regulations in the nature of local laws passed by the proper assembly or governing body of the corporation." The words "rules or regulations," as used in the clause of the Savannah charter above quoted, are not regarded as material. The act of council under consideration is neither a rule nor a regulation. It is, in short, what it expressly imports to be—merely a resolution of council; and a critical scrutiny of the charter of Savannah and the rules of council will, we think, disclose the fact that authority to pass any resolution is nowhere expressly given, and is by implication derivable only from an expression in rule 5 (MacDonell's Code, p. 46), reading:

"And no resolution providing for the expenditure of money shall be passed at the same meeting at which it is offered, without the consent of three-fourths of the members present," etc.

The power, then, to dedicate one of the city streets for street railway purposes, can be expressed by ordinance only. This is clear from the general power of the city to legislate (section 32 of the charter), as from other cognate clauses relating to the particular matter under consideration. The power of the city over streets and lanes is also limited to certain purposes by clause 35 of the charter. On the question of paving the streets and assessment of cost on property owners, section 36 of the charter provides that:

"The mayor and aldermen of the city of Savannah shall have full power and authority, by a vote of two-thirds," etc., "to adopt at any time an ordinance requiring the grading, paving, macadamizing or otherwise improving for travel or drainage, any of the streets or lanes of said city, a street railway company now having or which may hereafter have tracks running through the streets of said city so improved being required to macadamize or otherwise pave, as the said mayor and aldermen of the city of Savannah may direct," etc.

All of this must be done by ordinance. And this, as we have seen, has actually been attempted here by resolution; and here the street railway, it seems, has in this resolution been twice commanded to promptly pave—once with "brick," and again with "vitrified brick." A cognate section even more illustrative of the proposition announced is No. 43, p. 15, MacDonell's Code:

"The said mayor and aldermen, in council assembled, are authorized and empowered to build and operate carriage railways for the convenience of persons traveling in and visiting said city; and the rate of speed is to be regulated by ordinances."

And again, in section 44, the—

"Corporation of Savannah, may either build, construct and use such railways on its own account, or let or farm the privilege to individuals or companies, under the conditions and at such rates of fare and other charges as the city council of said city may by ordinance determine: provided that the rates of fare and other charges must beforehand be fixed by ordinance and published for general information."

It is true that, in their exhaustive brief, Messrs. Osborne & Lawrence, solicitors for the electric company, contend "that, the organic law authorizing council to do or not to do a thing, without prescribing the method, it is appropriate for council to act on resolution instead of by ordinance"; citing Dillon on Municipal Corporations, § 307, and note. Unhappily for this contention, the learned counsel do not quote the author with precision. The language of Judge Dillon is as follows:

"Where the charter commits the decision of a matter to the council, and is silent as to the mode, the decision may be evidenced by a resolution, and need not necessarily be by ordinance."

Nor do they quote the material language which follows:

"But if the organic law requires an act to be done by ordinance, or if such requirement is implied by necessary inference, a resolution is not sufficient."

Where the charter is silent as to the method, there are cases in which a resolution was held sufficient, and many others in which an ordinance was required; but it is believed in no case where it is expressly declared, as in the charter of Savannah, that the control of the streets, paving, street railways, and the like, must be by ordinance, that over the protest of the property holders a mere resolution has been sustained, granting permanent use of a street for railway purposes.

Then, to be effective, this attempted grant of power of the city to the electric company to appropriate Gwinnett street for its track must be regarded as an ordinance; and, as an ordinance, it is a void thing, because it in no sense complies with the method for enacting ordinances prescribed by the organic law of the city. This provides, under the head of "Council" (MacDonell's Code, p. 46, rule 5):

"All motions shall be made in writing, and seconded before debate, and every bill shall be read twice—that is, once at two distinct regular meetings of council—before it passes into an ordinance, unless in case of emergency, when a bill may be read twice by unanimous consent at the same session and passed; and after the passage of an ordinance, the same shall be signed by the mayor or presiding chairman, as soon as fairly copied, and be immediately thereafter published. * * * All ordinances when passed shall be fairly and correctly transcribed by the clerk of council in a book of ordinances, and when examined by the mayor and found correct, shall be signed by him or the officer presiding at the time of its passing, and countersigned by the clerk, with the seal of the city affixed. And all ordinances after having been read the first time shall, forthwith, be published for information in the official gazette until the next regular meeting of council."

None of these requisites appear. It is, moreover, not pretended that this is an ordinance, but it is relied upon as a resolution.

This precise question has been recently decided by the Circuit Court of Appeals of the Sixth Circuit in the case of Mayor, etc., of Morristown, Tenn., v. East Tennessee Telephone Co., 115 Fed. 304, 53 C. C. A. 132, Circuit Judges Lurton and Day, and by District Judge Wanty. It was there distinctly held that, where the charter conferred the power to grant street franchises by ordinance, no other method was admissible. Judge Lurton, rendering the opinion, states the same rule in another form:

"When, by statute or charter, power is conferred upon a municipal council, and is silent as to the mode of action, the decision may be by either ordinance or resolution, at discretion of the council. But when the charter prescribes that franchises can be granted by ordinance, it is not competent to make such

a grant by resolution." Citing Board v. De Kay, 148 U. S. 591, 13 Sup. Ct. 706, 37 L. Ed. 573, and a number of other authorities.

In view of this established principle, and in view, also, of the provisions of the charter of Savannah, which expressly restrict the power to legislate by ordinance only for the control of streets, pavements, street railways, and the like, it is clear that the effort on the part of council to grant the franchise under discussion to the street railway by resolution is absolutely null and void.

This conclusion greatly simplifies the duty of the court. We have under consideration the property rights of many complainants, all seriously threatened with loss and damage by the unlawful and void action of a city government which is itself the creature of the state. This action is taken in behalf of a street railway corporation which is also a creature of state law. It is clearly a case where the complainants have no adequate remedy at law. Before equitable relief is denied on this ground it must be made to appear that the remedy at law is in all respects as effective and satisfactory as that in equity. If driven to legal remedies, each lot owner must pursue his separate action in each case, with costs perhaps as great as in the case now before the court. The injunction sought will prevent a multiplicity of suits, all involving the same void enactment, all involving identical property rights of citizens, all residents of one locality. Notwithstanding the somewhat disparaging reference of the city's answer to "sentimental, whimsical, or archaic damages," that valuable property rights are in issue in this case is no longer open to question in the United States courts, and that injunction, under such circumstances, is the appropriate remedy, is equally as well settled.

In the recent case of Hart v. Buckner et al., from the Circuit Court of Appeals of the Fifth Circuit (5 C. C. A. 1, 54 Fed. 925)—a decision rendered for the court by that eminent jurist, Judge Pardee, December 19, 1892—it was held that owners of lots abutting or adjacent to a public street of the city, even if not owners of a fee in the street, have the right of access and the right of quiet enjoyment, and such rights are property which may be protected by injunction when invaded without legal authority. It was also held that, where there is an unauthorized obstruction of a public street, all of the adjacent lot owners who sustain special injury therefrom can maintain a suit for injunction. Here, moreover, it seems that in this particular locality in Savannah the fee to the streets is in the lot owners. The colonial act of May 1, 1760, which appears never to have been repealed, and is condensed in the city code (MacDonell) par. 117, contains this provision:

"And be it further enacted by the authority aforesaid, that the common appertaining to the said town, extending southerly from the extremity of the bluff on the River Savannah to the north line of the garden lots, and westerly from the west line of the garden lots, lying east of the said town to the east line of the lots lately laid out between Musgrove's Creek and the said town, including all the squares, streets, lanes, and passages, described in the plan of the said town in the Surveyor General's office, and have been heretofore accustomed or made use of by the inhabitants of the said town, shall be and continue the common property of the lot holders in the said town, and shall not be aliened or granted away for any purpose, whatsoever, than by act of the General Assembly."

This includes the lots and streets involved.

If, however, this colonial act shall be deemed inoperative, the general principle as announced by Judge Pardee is none the less applicable. The term "right of quiet enjoyment," as used by the Circuit Court of Appeals of this circuit in the case above quoted is somewhat elaborated in the case of Beeson v. Chicago (C. C.) 75 Fed. 880—opinion rendered by Judge Grosscup, now Circuit Judge. There it was declared that:

"The owner of abutting property has an interest in the street not common to all the people of the state, but personal and peculiar to himself. His property is affected in its commercial value, and in the possibilities and advantages of its use, by the character of the streets upon which it abuts. Such use of the street may destroy the availability of his land for the purpose he has in mind, or has already put into execution. Even partially sentimental objections, such as the noise of electric cars or the unsightliness of elevated structures, largely make up the actual elements of market value. Will any one contend," continues Judge Grosscup, "that the abutting property owner, having such a peculiar and personal interest, may not protect it, in his own right, in a court of equity, against the intrusion of a usurper who comes on the street without color of law?"

Nor has the Supreme Court of the United States been voiceless on this topic, so indispensable to the preservation of private property rights against the aggressions of municipal corporations. In the case of Chicago v. Taylor, 125 U. S. 162, 8 Sup. Ct. 820, 31 L. Ed. 638, under a clause of the state Constitution practically identical with the Constitution of the state of Georgia (Code Ga. 1895, § 5729), Mr. Justice Harlan, for the court, approves the conclusion that under this constitutional provision a recovery may be had in all cases where private property has sustained a substantial damage by the making and using of an improvement that is public in its character; that it does not require that the damage shall be caused by a trespass or actual physical invasion of the owner's real estate, as contended in the answer of the city here, but, if the construction and operation of a railroad or other improvement is the cause of the damage, though consequential, the party may recover. It is true that the Supreme Court of Georgia, in the case of Austin v. Augusta Terminal Co., 34 S. E. 852, has announced a different rule. It has held, in effect, that in such cases a citizen has no property right capable of protection by a court of law or of equity unless there is an actual physical taking of his property. This is the rule in Georgia, although two of the most eminent members of that distinguished tribunal placed on record their elaborate and most forceful dissent to the conclusions of the majority. With great deference to the distinguished judges who compose that court, it is not believed that their holding can contravene the decision of the Supreme Court of the United States in Chicago v. Taylor, supra, and the cases cited from the Circuit Courts of Appeal, which, upon precisely the same question, reach a conclusion diametrically the opposite. Besides, in that case the presence of the railway on the street was by lawful authority. It is no doubt upon the authority of this decision that the answer of the mayor and aldermen insists with such earnestness of asseveration that whether or not such railroad tracks should be upon Gwinnett street, or upon Bolton street, or upon any other street, the city council of Savannah, in its best judgment and discretion, is vested with the responsibility

of determining the same, and that in no event was there any taking of the property of the citizens. Were this true, there could be no bar to the exercise of an arbitrary discretion by municipal corporations, which, so far as his property was concerned, would reduce the American citizen to a condition in this respect not superior to that of the subjects of the most autocratic governments of the old world. There is, however, a conclusive bar to the exercise of such arbitrary discretion by municipal corporations. It is found in that salutary clause of the fourteenth amendment which declares that no state shall deprive any citizen of the United States of life, liberty, or property without due process of law. This is effective to protect the rights of citizens of Georgia, who are also citizens of the United States, who complain to the court, and, as well, the citizen of New York who has joined in their complaint. It is at this precise point that the courts of the United States, in the exercise of the jurisdiction depending upon that clause of the Constitution, are obliged to intervene in the proper cases, and they are not to be wholly controlled by the interpretation which state courts have placed upon the ordinances of municipal corporations which have the effect to take or to destroy the property rights of the citizen. In Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220, it was declared in a suit brought before the Supreme Court from a state court, which involved the constitutionality of ordinances made by municipal corporations in the state, that the United States court will, when necessary, put its own independent construction upon such ordinances. This, it may be observed, is obviously necessary, from the nature of the jurisdiction which the United States court exercises in the enforcement of this constitutional provision. If the construction given to the ordinances by the state courts was conclusive in such cases, the right of application to the United States court might be of little practical value.

Surely these principles thus distinctly and authoritatively announced are especially applicable in the case before the court. It is indisputable from the record that the electric company has no purpose to use this beautiful residence street for the transportation of passengers. It is adroitly alleged in the answers, and also stated in the affidavit of the mayor, that the proposed track is to be used for "passenger cars." This is true, but all of the evidence shows the fact that such passenger cars would be empties shunted into the car barns late at night, when the work of the day is over, and distributed therefrom at dawn, before the work of the day had begun. It is unfortunately true that this proposed servitude upon one of the most desirable and beautiful residence streets of the city of Savannah will occur at precisely that hour of the day and night when repose is most desired, and when its disturbance will be most injurious to the comfort and health of the residents and of their families, and to the value of their property. To this now quiet street, from several lines crossing it at right angles, at midnight and dawn, a multitude of empty passenger cars from every mile of the immense trackage of this great corporation will come, grinding and screeching around the curves, and with sounding of bells, the humming of motors, and the clangorous noise of machinery, will go speeding to or from the car barns of the company. It is not difficult to perceive that in the

climate of Savannah, where for the greater part of the year the people must sleep with open windows, such a concentration at midnight and dawn of empty cars of the electric company on that portion of Gwinnett street will constitute a burden upon the people of the most oppressive and injurious character, and be practically destructive of the comfort of their homes, and the especial value of their property.

It is equally clear that the company already has ample facilities for housing and distribution on Bolton street, where its track, as appears from the evidence, is only used to move empty cars. On these, according to the testimony of Mr. Holst, who lives in view, no passenger has ever been seen. This track is but one square to the south of Gwinnett, and now crosses the Atlantic Coast Line on grade level. This is done in order to reach the car barns of the defendant company, which are situated to the eastward of that railroad. By a turn to the left on the street contiguous to the railroad, and by running north the depth of one block, the Bolton street line thus used can be readily connected with the track already in use on the lower part of Gwinnett, and thus have easy and direct access to the proposed subway which is to be located there. It is true, as stated by the mayor, that there must be two turns in this track; but the only inconvenience therefrom, if any, will be experienced by the electric company and its employés. The question is readily suggested, is it conscionable for the city government of Savannah, by resolution or by ordinance, for the convenience of the corporation, to so largely impair the homes of one of the fairest sections of the city, and with the consequent loss of value and depreciation of property rights? It is to be observed that the mayor testified that the electric company proposed to take up the track on Bolton street altogether, and put it down on Gwinnett. It has always been used for the housing and distribution of empty passenger cars. This track has been on Bolton for many years. No complaint has been heard about its presence. The street is a narrow one, and by no means so desirable as Gwinnett for residence property. The latter street was by act of the city clearly dedicated for residential purposes. Indeed, it appears from the evidence of Mr. J. B. Holst that by ordinance of the city of Savannah it is required that not more than one house shall be built on every 40 feet in that section of the city. The import of this provision is obvious.

In view of these considerations, after careful deliberation, we have reached the conclusion that the resolution of the mayor and council of the city of Savannah was passed in grave, if not flagrant, disregard of the just rights of the citizens and property holders who are complainants; that the latter, in a manner violative of the usages, if not the principles, of popular government, have been denied a hearing in a matter vital to their interests by the government of their city, when that hearing had been expressly promised them, but that the resolution passed in disregard of their rights is, happily, in the interests of justice, null and void, and is not authorized by the charter of the city, or conformable to the express methods of legislation therein enacted with relation to the topics involved; that the resolution is unnecessary for the benefit of the electric company, unreasonable, and wholly unnecessary for the public convenience. On the contrary, if permitted to stand,

131 F.—60

it would be most oppressive to the complainants, in that it is particularly destructive of the quiet and comfort of their homes, with large and inevitable diminution in the value of their property rights.

For these reasons, it will be ordered that the injunction pendente lite shall be made permanent until final decree, and that the cause will proceed as usual in equity.