## ATCHISON BOARD OF EDUCATION *v.* DE KAY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

No. 176. Argued and submitted March 24, 1893. — Decided April 10, 1893.

The bonds issued by the city of Atchison, Kansas, January 1, 1869, pledging the school fund, etc., of the city for payment were valid obligations.

The legislation of Kansas relating to cities of the first class, and to cities of the second class, and to Boards of Education, reviewed.

An error of a single word in the title of a statute in copying it into a municipal bond does not vitiate the deliberate acts of the proper officers of the municipality, as expressed in the promise to pay which they have issued for money borrowed.

It is a general rule that, where a municipal charter commits the decision of a matter to the council of the municipality, and is silent as to the mode of decision, it may be done by a resolution, and need not necessarily be by an ordinance; and the decision in *Newman* v. *Emporia*, 32 Kansas, 456, is not in conflict with this rule.

When municipal bonds have been issued in reliance upon a consent of the proper municipal authorities, as shown by the municipal records, and for

years thereafter, interest had been duly paid upon such bonds, the courts will not, after the lapse of twenty years, in a suit upon the bonds, pronounce them invalid on purely technical and trivial grounds.

An express power conferred upon a municipal corporation to issue bonds bearing interest, carries with it the power to attach interest coupons to those bonds.

This action is properly brought against the Board of Education of the city of Atchison, which is a distinct corporation, and the proper one to be sued for a debt like this.

· On January 1, 1869, the Board of Education of the city of· Atchison issued $20,000.00 of bonds. They were in this form:

"No. —. *School Bond.* $1000.00.

"City of Atchison, State of Kansas.

"Know all men by these presents, that the city of Atchison, Kansas, for value received, is indebted to the bearer in the sum of one thousand dollars, which it promises to pay on the 1st day of January, A.D. 1884, at the National Park Bank, in the city of New York, with interest at the rate of ten per cent per annum, payable semi-annually, on the 1st day of January and on the 1st day of July of each year upon presentation at the said National Park Bank of the interest coupons hereto attached as they mature; the last instalment of interest payable with this bond. This bond is issued under and by virtue of an act of the legislature of the State [of] Kansas, entitled 'An act to organize cities of the second class, approved February 28, 1868,' and is secured by pledge of the school fund and property of said city of Atchison for the payment of the principal and interest thereof, as the same may become due.

"Dated at Atchison, this 1st day of January, 1869.

"(Signed) JNO. A. MARTIN,

"*President of the Board of Education.*

"W. F. DOWNS, *Clerk.*

"Countersigned:

"FRANK SMITH, *Treasurer.*"

Each bond had interest coupons attached. On June 30, 1885, plaintiff, Francis M. De Kay, claiming to be the owner of certain of these bonds and coupons, commenced suit in the

Circuit Court of the United States for the District of Kansas. The defendant answered, a trial was had, and on June 6, 1889, judgment was entered in favor of the plaintiff for $31,699.40, from which sum $1325 was thereafter remitted, as excessive interest. To reverse this judgment, defendant sued out a writ of error from this court.

*Mr. Henry Elliston* for plaintiff in error. After hearing *Mr. Elliston* the court declined to hear further argument.

*Mr. David Martin* filed a brief for plaintiff in error.

*Mr. Thomas J. White* for defendant in error.

Mr. Justice Brewer delivered the opinion of the court.

Two questions are presented: First. Were the bonds and coupons valid obligations? Second. If valid, was the Board of Education of the city of Atchison the proper defendant, and could judgment be rightfully entered against it for the sum of these bonds and coupons?

The bond on its face purports to be the obligation of the city of Atchison, secured by pledge of the school fund and property of the city, and was executed by the president and clerk of the Board of Education. It is insisted that the Board of Education had no power to bind the city by such a promise to pay. To a clear understanding of this question an examination must be made of the statutes of Kansas. The city of Atchison was incorporated under an act of the Territory of Kansas of February 12, 1858. Private Laws, 1858, p. 172. By an act passed the same day, providing for the organization, etc., of common schools, (Public Laws, 1858, pp. 47 and 51, c. 7, §§ 15, 37,) each county superintendent of common schools was authorized to divide his county into school districts, and every school district organized in pursuance of the act was declared to be a body corporate, possessing the usual powers of a corporation for public purposes, with the name and style of "School District No. —, County of ——." Under that act "school district number 1, Atchison County," was organized with territorial limits, the same as those of the city of Atchison.

On February 23, 1867, an act was passed to incorporate cities of the second class, that class being of those cities having more than 1000 and less than 15,000 inhabitants, to which class the city of Atchison belonged. Laws of 1867, p. 107. Section 14 is as follows: "Each city shall constitute at least one school district, and the city shall not be divided into more than one school district without the consent of a majority of the council, but such council may divide the city into as many school districts as it may deem expedient." On February 26, 1867, a supplemental act was passed, (Laws, 1867, p. 128,) providing for a Board of Education in cities of the second class, to have charge of school matters. Particular reference to the provisions of this act is unnecessary, as both these acts were superseded in the revision of 1868. General Statutes of Kansas, p. 154, c. 19. This act was entitled: "An act to incorporate cities of the second class." This was a new enactment, though practically only a consolidation and revision of the statutes of 1867, in reference to such cities. It contained section 14, heretofore quoted, of the law of 1867, and placed, as did the supplementary act of 1867, the entire control of school matters in a board of education.

Noting the act a little in detail, section 55 provides that "at each annual city election, there shall be a Board of Education, consisting of two members from each ward, elected," etc. Section 57: that such board shall "exercise the sole control over the schools and school property of the city." By section 67, the Board of Education was empowered to estimate the amount of funds necessary to be raised by taxation for school purposes, and report the same to the city council, by which body the amount was levied and collected as other taxes. Under section 68, the moneys thus collected were paid into the hands of the city treasurer, subject to the order of the Board of Education. Sections 69, 70, 71, 76 and 77 are as follows:

"SEC. 69. The whole city shall compose a school district for the purposes of taxation.

"SEC. 70. The title of all property held for the use or benefit of public schools shall be vested in the city.

"SEC. 71. No school property of any kind shall be sold or

conveyed by the mayor or councilmen, except at a regular meeting of the same, and not then without the concurrence of the Board of Education."

"Sec. 76. Whenever it shall become necessary, in order to raise sufficient funds for the purchase of a school site or sites, or to erect a suitable building or buildings thereon, it shall be lawful for the Board of Education of every city, coming under the provisions of this act, with the consent of the council, to borrow money, for which they are hereby authorized and empowered to issue bonds, bearing a rate of interest not exceeding ten per cent per annum, payable annually or semiannually, at such place as may be mentioned upon the face of said bonds, which bonds shall be payable in not more than twenty years from their date, and the Board of Education is hereby authorized and empowered to sell such bonds at not less than seventy-five cents on the dollar.

"Sec. 77. The bonds, the issuance of which is provided for in the foregoing section, shall be signed by the president and clerk of the Board of Education, and countersigned by the treasurer; and said bonds shall specify the rate of interest, and the time when the principal and interest shall be paid, and each bond so issued shall be for a sum not less than fifty dollars."

Section 78 peremptorily required the Board of Education in its annual estimate, authorized in section 67, to include a sufficient amount to pay the interest on such bonds and create a sinking fund, and such amount the city council was required to levy and collect. Section 81 reads: "The school fund and property of such city is hereby pledged to the payment of the interest and principal of the bonds mentioned in this article, as the same may become due."

What, now, are the specific objections to the validity of these bonds and coupons? First, it is objected that the bond purports to be issued under authority of an act entitled "An act to organize cities," etc., approved February 28, 1868; that no such act is to be found in the statutes of that year; and that, therefore, the bonds were issued without authority of law, and are not valid obligations. This is trifling. There was an act giving authority to the Board of Education

to borrow money and issue bonds, and whose title was exactly as described in this bond, except in place of the word "organize" the word "incorporate" was used. *Falsa demonstratio non nocet. Commissioners* v. *January*, 94 U. S. 202. An error in copying into an instrument a single word in the title of a statute does not vitiate the deliberate acts of the proper officers of a municipality as expressed in the promise to pay, which they have issued for money borrowed.

Again, it is insisted that the Board of Education had no power to bind the city of Atchison as a municipal corporation, but only that other and quasi-corporation, known as School District No. 1, Atchison County. The argument is that there were two corporations: First, a school district corporation whose name and corporate existence were prescribed by the laws of 1858; and another, a strictly municipal corporation, known as the city of Atchison, with the ordinary powers attached to such a municipality; that though they embraced within their limits the same territory and population, they were in fact distinct corporate entities; and that the Board of Education, having control of the affairs of the one corporation, had no power to bind the other by its promises to pay. It may well be doubted whether there were two distinct corporations. Section 14 of the acts of 1867 and 1868, incorporating cities of the second class, provided that "each city shall constitute at least one school district." There is no pretence, under the power reserved in that section, that the city of Atchison was ever divided into districts; so, by that section, Atchison city constituted a school district. The members of the Board of Education were to be elected at the annual city election, and to the board was given full control of the school affairs of the city. Section 57. In other words, it was the city's schools and the city's school property which were placed under the management of the Board of Education. Upon the report of the Board of Education, the city council levied and collected the school taxes, Section 67; and when they were collected they were retained by the city treasurer in his custody. Section 68. The title to all school property was vested in the city. Section 70.

No bonds could be issued without the consent of the city council. Section 76. And the school fund and property of such city was pledged to the payment of the bonds. Section 81. The whole idea of the statute seems to have been the mingling of the schools and the school interests with the ordinary municipal functions of the city of Atchison, giving to the Board of Education, as an administrative body of the city, the management of the schools and the school property. Further, when, in 1872, a new act was passed in respect to the incorporation of cities of the second class, by section 100, Laws of 1872, p. 221, it was expressly provided that " the public schools of each city organized in pursuance of this act, shall be a body corporate, and shall possess the usual powers of a corporation for public purposes by the name and style of ' The Board of Education of the city of ———, of the State of Kansas '; and in that name may sue," etc. This legislation seems to imply that up to that time there was in cities of the second class no separate school corporation.

But even if this be a misconstruction of the statute, it is clear that the school district and the city were coterminous; that, by the act of 1868, the Board of Education was authorized to borrow on the credit of the school property, with the consent of the city council, and to issue bonds in payment therefor. They did proceed, as appears from the recital in the bonds, under authority given by that act, and if there were a misrecital of the name of the obligor, such mere misrecital would not vitiate the obligations. Proceeding strictly under that act, they bound the corporation whose officers they were and for which they assumed to act, and whether the name of that corporation was technically " The City of Atchison " or " School District No. 1, Atchison County," by the issue of bonds they bound that corporation.

This is not the case, as counsel suggest, of a written declaration of A. that B. is indebted, and that B. promises to pay; nor a case where two corporations are so entirely distinct that the name of one in an instrument carries no possible suggestion that the other was intended, but it is the case where officers of a corporation having power to borrow and issue promises

to pay have at the best only misrecited the name of the corporation for which they issued and were authorized to act.

Another objection is, that there was no legal consent of the city council, as required by section 76. The record shows that on Monday, October 5, 1868, none of the councilmen being present, the city clerk adjourned the council to Monday, October 12. On Monday, October 12, the mayor and five of the eight councilmen appeared, the minutes of all previous meetings not theretofore read were read and approved, and the council adjourned until Monday, October 19. On Monday, October 19, council met pursuant to adjournment, and another adjournment was had until October 26, and, so, from October 26 to October 28, and thence to November 2, and to November 9. At none of these meetings were all of the city council present. At the meeting on November 9, the mayor and five councilmen, being a majority of the council, were present, and a resolution was passed giving the consent of the council to the issue of these bonds. Now, it is insisted that consent could only be given by an ordinance, and not by resolution, and in support thereof the case of *Newman* v. *Emporia*, 32 Kansas, 456, is cited; that even if a resolution were sufficient, there was no legal meeting of the council, because all the members were not present, and it does not appear that all were notified, or that a special meeting had been duly called; that it was not at a regular, but apparently an adjourned, meeting; and that the first adjournment, on October 5, was without validity, because none of the councilmen were present, and the adjournment was ordered by the clerk alone, and in support of the proposition that notice to or presence of all the members is essential to a valid special meeting, the cases of *Paola & Fall River Railroad* v. *Anderson County Comm'rs*, 16 Kansas, 302, and *Aikman* v. *School District*, 27 Kansas, 129, are cited.

In respect to the first of these contentions: The general rule is, that where the charter commits the decision of a matter to the council, and is silent as to the mode, the decision may be evidenced by a resolution, and need not necessarily be by an ordinance. *State* v. *Jersey City*, 27 N. J. Law, (3 Dutcher,) 493; *Butler* v. *Passaic*, 44 N. J. Law, (15 Vroom,) 171; *Bath*

*Wire Co.* v. *Chicago, Burlington &c. Railway,* 70 Iowa, 105; *Sower* v. *Philadelphia,* 35 Penn. St. 231; *Gas Company* v. *San Francisco,* 6 California, 190; *First Municipality* v. *Cutting,* 4 La. Ann. 335; *Green Bay* v. *Brauns,* 50 Wisconsin, 204; 1 Dillon's Municipal Corporations, (4th ed.,) § 307 and notes. Nor is there anything in the case in 35 Kansas in conflict with this. That simply holds that when a charter requires that certain things be done by ordinance, they cannot be done by resolution. In this act incorporating cities of the second class there is nothing which either in terms or by implication requires that the consent of the city council should be given only by ordinance. A resolution was, therefore, sufficient.

Neither is the other contention of any force. The record of the city council was produced, showing a series of meetings extending from October 5 to November 9, at some of which meetings general business was transacted. The act of 1868, section 13, provides that regular meetings of the city council shall be held at such times as the council may provide by ordinance. No evidence was offered showing what were the dates of regular meetings, as provided by ordinance. We are left to infer that these meetings were not regular meetings from the language at the commencement of the records thereof — "that council met pursuant to adjournment." The first adjournment was made by the city clerk alone, no member of the city council being present. We are not advised by the testimony as to what rules, if any, had been prescribed by the city council in respect to such matter. It is not an uncommon thing for legislative bodies, such as a city council, to provide by rule that in the absence of all members the clerk or secretary shall have power to adjourn. That probably such a rule as that was in existence is evidenced by the fact that at succeeding meetings — which, giving full weight to the language used at the commencement of the record, were simply adjourned meetings — the council, all but one of whom were present at one of the meetings, approved the records. All these entries of meeting appear to have been kept upon the regular record of the city council, and it is obvious that either because an adjournment by the clerk in the absence of the council was

authorized by rule, or because the days of the subsequent meetings were, in fact, the regular days therefor, such meetings were accepted and recognized by the council as legal. Certain is it, that when bonds have been issued in reliance upon a consent thus evidenced, and when for years thereafter interest has been duly paid upon such bonds, the courts will not, after the lapse of twenty years, in a suit on the bonds, pronounce them invalid on such technical and trivial grounds. The cases cited from 16 and 27 Kansas do not militate against these views. In the case in 16 Kansas, which was an action by the county against the railway company to cancel a subscription for stock, and for the return and cancellation of bonds of the county on deposit with the state treasurer, the matter was submitted on demurrer to the petition, and that petition averred that the subscription was ordered at a special session of the board, at which only two of the three commissioners were present; that no call for such session was made, nor anything done to authorize a call; that B. M. Lingo, the absent commissioner, was in the county, at his residence, but had no knowledge or notice of such intended special session; "that knowledge and notice of such intended special session was intentionally and fraudulently concealed and kept from said B. M. Lingo by the said railway company and its agents; and said session was not a regular session of said board, nor was it an adjourned session from any regular session thereof, nor from any duly called special session of said board." The court held that the subscription ordered under those circumstances was not binding upon the county. In that case, the contract was executory, and the bonds had not been delivered, but were still within the control of the county. The special session, with only a fraction of the board present, was fraudulently intended and fraudulently brought about, and the railway company was the wrongdoer. The illegality of the session was not a matter of inference, but a fact alleged and admitted.

The case in 27 Kansas is even stronger. That was a suit on a written contract, signed by two members of a school district board, the board consisting of three. Such a contract could only be made by the district board, as a board. It appeared

affirmatively that there was no meeting of the board ; that it was signed by the two members, not after consultation, but by each separately, and at a different time from the other.

More in point is the case of *Scott* v. *Paulen,* 15 Kansas, 162, 167, in which a session of a board of county commissioners was held to be valid, at which only two out of the three members were present ; and the record failed to show either an adjournment to that date, or a call for a meeting at that time, but did show that it was not held on the regular days of session ; but its validity was not challenged until some time thereafter. In the opinion in that case, written by the same judge who wrote the opinion in the case in 16 Kansas, is this language : " Hence it seems to us that when a quorum of the county board, with the clerk, is present, assuming to act as a county board, and at a time and place at which a legal session is possible, and to such board in actual session a proper and legal petition is presented for a county-seat election, and an election ordered, and thereafter full and legal notice given of such election, two elections had, generally participated in by the electors, the result canvassed and declared, and no objection made thereto for more than a year, it will be too late to question the validity of the election on the ground that the record of the proceedings of the commissioners shows that the chairman was absent, and fails to show a session pursuant to a legal adjournment from a regular session, or that the session was a special session and duly called by the chairman on the request of two members." We think, therefore, that the bonds in suit were valid obligations, and that the Circuit Court did not err in overruling these objections to them.

But it is further insisted that even if the bonds were valid the coupons were not, because coupons are not named in the section of the statute authorizing the issue of the bonds. But coupons are simply instruments containing the promise to pay interest, and the express authority was to issue bonds bearing interest. While it is true that the power to borrow money granted to a municipal corporation does not carry with it by implication the power to issue negotiable bonds, (*Brenham* v. *German American Bank,* 144 U. S. 173,) we are of opinion

that the express power to issue bonds bearing interest carries with it the power to attach to those bonds interest coupons.

The final objection is, that the proper defendant is not sued. The claim here is, that while by the act of 1872 the public schools of cities of the second class were organized into a body corporate, by the name and style of "The Board of Education of the City of ——, of the State of Kansas," and at that time, if not before, the real debtor was this distinct corporate entity, yet, at the time of the commencement of this action, the city of Atchison had passed, by reason of the growth of its population, from a city of the second to a city of the first class; and that in such cities there was no separate school corporation, but the Board of Education was simply an administrative body, having charge of the school affairs of the city. The case of *Knowles v. Topeka*, 33 Kansas, 692, is a sufficient answer to this contention. Topeka, like Atchison, had been a city of the second class, and became by mere increase in population a city of the first class; and in the opinion of the court in that case, delivered by Chief Justice Horton, it is declared that "the Board of Education of the city of Topeka is a distinct corporation from the municipal corporation of the city of Topeka." That case came to the Supreme Court from the Superior Court of Shawnee County; and in the opinion in the latter court, delivered by Webb, Judge, an opinion which is found in the report of the case, and referred to with approval by the Supreme Court, is this discussion of the question : "Topeka remained a city of the second class until January, 1881, when it became a city of the first class. Article 10 of said chapter 122, Laws of 1876, relates to 'public schools in cities of the first class.' Its provisions, as to the powers and duties of the Board of Education, are very similar to those contained in article 11 relating to 'public schools in cities of the second class.' But there is no provision in said article 10, declaring that 'the public schools' or the 'school district' of cities of the first class shall be bodies corporate. Nor has the writer of this opinion been able to find any such provision in any act or statute, although the powers conferred by said article 10 are those usually conferred upon incorporated school districts, and the gov-

ernment of the public schools in incorporated cities has been in the hands of 'Boards of Education' since 1867. There has been no legislation respecting Boards of Education of cities of the first class since Topeka became a city of that class, except that which regulates the number of members, and fixes their terms. But it will hardly be contended that the corporate powers lawfully conferred upon the Board of Education of the city of Topeka, when said city was a city of the second class, have been lost or destroyed by reason of the transition of the city from a city of such class to a city of the first class. It will, therefore, be considered, for the purposes of this case, that the public schools of the city of Topeka are 'a body corporate under the name and style of the Board of Education,' and that, therefore, said chapter 56 of the Laws of 1885 is not void for want of a proper body corporate to which it can apply."

That which was true of Topeka is of course true of Atchison, and the Board of Education of the city of Atchison is a distinct corporation, and the proper one to be sued for the enforcement of a debt like this. Indeed, if it were not a corporate entity, by what right does it come into court and carry on this litigation?

We think this is all that needs to be said in reference to the questions presented. The defences interposed are purely technical, and, as we think, without foundation.

*The judgment is affirmed.*