(*Criminal Court of Cook County.*)

## People of the State of Illinois

### vs.

## Arthur G. Wheeler, et al.

## People of the State of Illinois

### vs.

## Novak, et al.

(March, 1905.)

FORGERY—ALTERATION OF PROCEEDINGS OF CITY COUNCIL. The defendants were indicted under the statute of Illinois for forgery for altering the printed records of the city council of Chicago in reference to its action on a certain report of the commissioner of public works relating to the construction of certain tunnels and conduits of the Illinois Telephone and Telegraph Company. The report was in fact ordered by said city council to be "placed on file" but the printed record of the city

council was changed so as to read "which was on motion of Ald. Novak (8th ward) *duly approved* and placed on file." *Held* that this constituted a forgery of a record or other authentic matter of a public nature by which a pecuniary demand or obligation or a right in property is or purports to be created, conveyed, transferred, diminished or destroyed with intent to damage and defraud some person, body politic or corporate, constituting the statutory crime of forgery.

Indictments for forgery and perjury. Motion to quash the indictments. Heard before Judge Richard S. Tuthill.

For statement of facts see opinion.

*John J. Healy,* state's attorney, *Harry Olsen* and *E. C. Lindley,* assistant state's attorneys, for the people.

*Levy Mayer, Nathaniel C. Sears* and *A. S. Trude,* for the defendants.

TUTHILL, J.:—

The question here involved is one of strict law. Its consideration and determination is based upon the facts set out in the indictment, which are to be taken as true. The court is not permitted to have in mind or to surmise any different statement of facts than that found in the indictment.

The city council of the city of Chicago, February 20, 1899, enacted an ordinance granting a valuable franchise, in and under the public streets of the city of Chicago, to the Illinois Telephone and Telegraph Company, which, being duly approved by the mayor and accepted by the corporation, became a law of the city, and at the same time a valid contract between the city and said corporation. This ordinance gave to the said corporation authority to construct, etc., in the streets and public places of the city "a line or lines of conduits and wires or other electrical conductors," to be used for the transmission of sounds, signals and intelligence, by means of electricity or otherwise. It requires that such conduits should be placed under ground in the main portion of the city.

It gave to the mayor the authority to designate in what streets conduits might be laid and required the company to "at all times place and keep on file with the commissioner of public works plans showing the location of each conduit laid,"

and that no conduits should be laid without first obtaining a permit from the commissioner of public works. The ordinance further provided that before opening any street for the purpose of laying, repairing or removing conduits said company should obtain ''from the commissioner of public works a permit therefor in accordance with the conditions and requirements in this ordinance.''

The indictment sets out the ordinance in full and alleges that there were on file with the commissioner of public works plans showing certain streets, etc., under and in which said company proposes to construct its conduits which the company had, pursuant to the terms of said ordinance, filed with said commissioner; which said plans, it is alleged, on the 6th day of December, 1899, were ''approved by one John Erickson, city engineer;'' that on the 8th day of December, 1899, ''pursuant to the terms of said ordinance there was issued to the said company a permit, which permit authorized said company ''to construct by *tunneling* its conduits under the ordinance aforesaid.'' This permit is set out in the indictment. It gave the right to tunnel, ''proceeding from a shaft already constructed in the rear of 170 Madison street, and from other shafts for which said permits may be issued.'' It reserves the right to the city engineer to appoint such engineers and inspectors as he may deem necessary for the proper supervision of the work and to protect the city's interests, but provided that the conduits constructed should be used for no other purpose than the stringing therein of wires, etc., ''to be used for the transmission of sound, signals and intelligence in accordance with the ordinance.'' It is then stated that the said company ''assuming to act under the authority conferred in and by said ordinance and said permit and prior to the fifth day of February * * * did construct a conduit tunnel or subway of great length to-wit, of the length of 560 feet, and of great height, to-wit, of the height of seven feet six inches, and of great width, to-wit, six feet wide, and of great depth under the streets, to-wit, to the depth of twenty-five feet below the surface,'' etc.

The indictment then alleges that on the 29th day of Janu-

ary, 1900, there was duly adopted a certain resolution on motion of Alderman Hermann, which was as follows:

"Whereas, It is currently reported that the Illinois Telephone and Telegraph Company is constructing a costly conduit system under the streets of the city so large that it would interfere with other or different use of the streets should it hereafter be desired by the city so to use it, and so extensive as to be a violation of the letter and spirit of the ordinance upon which their rights depend, and to be wholly unnecessary for any legitimate necessity of the telephone business, therefore be it

Resolved, That the commissioner of public works be requested to inform this council what permits have been issued to the said company for the doing of work in the streets of this city and under what authority each of said permits has been issued; and

Resolved, further, That said commisioner be requested to report to this council what work is being done by said company in said streets, and whether and how far the work done, in his opinion is within the fair letter and spirit of the ordinance of said company.

It is then further stated that on the fifth day of February, 1900, said commissioner of public works submitted to the council in writing the report called for by the said resolution, which said report is set out in full in the indictment. It gave the information asked as to the character of the work done, as to the permits under which said work had been done and set out in full the permits.

The commissioner of public works informed the council that "The city electrician assures me that the space is not more than is absolutely necessary to accommodate the business to be transacted by the Illinois Telephone and Telegraph Company under the plan and scope presented by the president of that company and for the accommodation of such wires as the city may need for lighting and telegraph purposes, as they are authorized to use them under the said ordinance. The conduit is being constructed at a point twenty-five feet below the surface." He further states to the coun-

cil, ''The work is progressing with very little inconvenience to the general public and I believe is fully within the fair letter and spirit of the ordinance,'' etc.

The indictment states that this report was then and there ordered by the said city council placed on the file, and was by said city council of said city of Chicago published as a part of its official proceedings, and then and there became and was an official record of said city council of said city of Chicago of its said proceedings on the fifth day of February, 1900, and then and there became a record of a public nature.

I am of the opinion that it was such.

It is thereafter in said indictment alleged with all needed particularity that the defendants did ''feloniously, fraudulently, unlawfully, knowingly, wilfully and falsely alter the said true and genuine record of a public nature aforesaid * * * by inserting after the words 'which was' and before the words 'placed on file' the other words, 'on motion of Ald. Novak (8th ward) duly approved and,' '' making the action of the council to read in these words: ''which was on motion of Ald. Novak (8th ward) duly approved and placed on file.''

It is maintained by the state that these facts alleged in the indictment constitute the crime of forgery. The learned counsel for the defendants maintain that they do not. As heretofore said, all facts well pleaded and set forth in the indictment must be taken to be true as stated. What then are the facts? I have as briefly as might be above recited them as they are fully and at length set out in the indictment.

It is pertinent here to consider the statute upon which the indictment is based. Eliminating words which have no direct reference to the facts of this case the statute is as follows:

''Every person who shall falsely make, alter, forge or counterfeit any record or other authentic matter of a public nature * * * by which any pecuniary demand or obligation or any right in any property is or purports to be created, increased, conveyed, transferred, diminished or destroyed * * * with intent to damage or defraud any person, body

politic or corporate'' shall be deemed guilty of the crime of forgery.

The words ''by which any pecuniary demand or obligation or any right in any property is or purports to be created, increased, conveyed, transferred, diminished or destroyed,'' it is maintained by ingenious and able counsel for the state, do not apply to the words ''any record or other authentic matter of a public nature.'' Under the familiar rule of *ejusdem generis* this contention must fall. The substance and effect of this rule is found stated in many decisions, and is given in Lewis' Sutherland on Statutory Construction in these words: ''It is a principle of statutory construction everywhere recognized and acted upon, not only with respect to penal statutes, but to those affecting only civil rights and duties, that where words particularly designating specific acts or things, are followed by and associated with words of general import comprehensively designating acts or things, the latter are to be regarded as comprehending only matters of the same kind or class as those particularly stated. They are to be deemed to have been used, not in the broad sense which they might bear if standing alone, but as related to the words of more definite and particular meaning with which they are associated.'' Further, the punctuation makes the construction argued for by the state, to my mind, wholly inadmissible.

It follows, then, that to sustain this indictment for forgery it must set out a forgery for a record or other authentic matter of a public nature, by which a pecuniary demand or obligation or any right in any property is or purports to be created, conveyed, transferred, diminished or destroyed, with intent to damage and defraud some person, body politic or corporate.

We have stated in the indictment:

First. An ordinance of the city of Chicago to construct a conduit for telephone and telegraph wires in the streets of Chicago. The mayor was given authority by this ordinance to designate in what streets these conduits might be laid.

Second. Without any permit signed by the mayor and without any authorization by the city council a tunnel twenty-

five feet high and six feet wide was being constructed, and 560 feet of it had been constructed at the time the resolution of the council was passed calling upon the commissioner of public works to make a report, as set out in the Herrmann resolution.

Third. The report was made, which truly and fully set forth all that had been done and was being done and under what authority.

Fourth. The defendants fraudulently and feloniously altered, forged and counterfeited (if the papers were those upon which an alleged forgery could be based) the order of the city council to file or receive (for the words are practically synonymous) the report of the commissioner of public works, by adding thereto the words above set forth. The council, it is alleged, ordered the filing of the report.

There can be no question as to the power of the council to make such an order, nor can there be doubt as to the right of and legal power of the council to vote to ''approve'' or ''reject'' the report made pursuant to its previous order in the Hermann resolution.

The ninety-sixth clause of section 1, article 5, of the city charter conferred upon the city council power ''to pass all ordinances, rules, and make all regulations proper and necessary to carry into effect the powers granted'' in such charter. The preceding ninety-five clauses of said section specify in detail these various powers. In only a few of them is the power conferred required to be exercised through the enactment of a formal ordinance with the enacting words ''Be it ordained by the city council.'' (See sec. 2, Id.) Section 3 provides for the publication of all ordinances ''imposing a fine, penalty, imprisonment or forfeiture, or making any appropriation.'' Its closing sentence is, ''All other ordinances, orders and resolutions shall take effect from and after their passage unless otherwise provided therein.'' It would be impracticable if not impossible by ordinance for the city to exercise many of the multiform powers conferred. The corporation can not accomplish by an order or resolution (the words are used interchangeably) that which under its char-

ter is only permitted to be done by an ordinance. "An ordinance prescribes a permanent rule of conduct or government, while a resolution is of a temporary character." Again, "It may be stated as a general rule that matters upon which a municipal corporation desires to legislate must be put in the form of an ordinance, while all acts that are done in its ministerial capacity and for a temporary purpose may be put in the form of a resolution." (See McQuillan, Municipal Ordinances, sec. 2, and cases cited.)

"The resolution is designed to meet specific and individual cases." (1 Thompson, Corporations, sec. 937.)

"The general rule is that when the charter is silent as to the mode of doing an act, the act may be done and evidenced by a resolution." (*Atchison Bd. of Ed. v. DeKay*, 148 U. S. 591, 37 Law. Ed. 576, and cases cited.)

It thus appears that the general powers of law applicable to municipal corporations permit and sanction the doing of a vast number of acts, which such organizations must perform, by means of orders and resolutions duly passed by the city council, and that this method of enforcing many of the powers conferred in the charter of Chicago is recognized in the charter itself.

The city council had ample power, then, to dispose of the report sent to it by the commissioner of public works, as it saw fit. This action was not one requiring the passage of an ordinance. The council might have said nothing when the report came in. It might have placed it on file, receiving it merely. It might have approved. Placing it on file would not be an affirmative act, such as would commit the council or the city to anything in the report. Such would not, however, be the case, should the council by vote approve or adopt the report.

For the first time, as far as this record shows, the council, from the report filed, learned that the corporation had proceeded to lay conduits in the streets without the permits required in the ordinance, from the mayor.

It learned for the first time that an underground tunnel of large proportions was being laid, which the city engineer

thought was not unnecessarily large for telephone and tele-
graph uses. It learned for the first time these facts, and of
the method of doing the work as shown by the permits. It
had the statement also of an honorable and capable and in
all respects trustworthy commissioner of public works, of his
approval of all that had been, and was being done under the
ordinance, as being within the letter and spirit of the ordi-
nance, as he construed it. It might be admitted that his
views would have been the views of the best and wisest men
in the city, had they equal knowledge of the matter; yet he
could not bind the city, nor did he attempt to do so. In obe-
dience to the direction of his superior, the city of Chicago,
he made his report, and gave his opinion. The city council
was then, if it desired, to approve his report. The indictment
says that it did not approve, that it only placed the report on
file, but that the defendants altered the record showing the
action of the council by making it show that on motion of
Alderman Novak, of the eighth ward, that report was ap-
proved and placed on file, which alteration, it is alleged, con-
stituted and was a forgery of a record or other authentic
matter of a public nature with intent to defraud, etc. It is
strongly urged that said purported order or resolution of the
council was not one ''by which any pecuniary demand or ob-
ligation or any right in any property was or purports to be
created, increased, conveyed, transferred, diminished or de-
stroyed.''

Let us for a moment consider the meaning of these words,
all of which under the rules of legal construction must be
given force and effect, if possible. I submit that they in-
clude everything that can possibly be done by means of a
''record or other authentic matter of a public nature'' or by
means of a ''charter,'' ''letters patent,'' ''deed,'' ''lease,''
''indenture,'' ''writing obligatory,'' ''a will,'' or by any
other of the subjects of forgery mentioned in the statute. A
pecuniary demand or obligation or a right in property may
be created, it may be increased, it may be conveyed, it may be
transferred, it may be diminished, it may be destroyed, by
any of these instruments of which a forgery may be effected.

That includes all that can be done by and through these different named instruments, documents, etc. Broader terms could hardly have been used.

Can the courts say, without bringing in extrinsic matters, that the forgery of the word "approved" in this case did not, could not have an effect to "create" a pecuniary demand or obligation or any right in any property, that it did not, could not have an effect to "increase" any right in any property, that it did not, could not have an effect to "convey" or "transfer" any right in any property, that it did not, could not have an effect to "diminish" or "destroy" any right in property?

The city holds the streets and public places as property. They belong to the city. Some are held in fee and in others it has the perpetual right of user, which is also property. It might be said that no forgery could create, etc., any pecuniary obligation or give any right in property, for the law will treat it as a void and criminal act. A note forged is in effect no note at all. No pecuniary obligation is created thereby. So the forgery of this record, in very fact, neither could create, diminish or destroy the legal rights of the city, but it could purport to, just as the forgery of any other instrument could purport to create rights. It is held as fundamental law that it is not necessary that the indictment show how the false instrument would, if true, create, increase, diminish or defeat any pecuniary obligation, or would transfer or affect any property whatever. These are deductions of law not to be varied. Ency. P. & P., p. 558, and cases cited.

"Nor does the rule require that an indictment should contain a specific allegation of the existence of every fact, the existence of which is assumed in a forged instrument. It is enough if the writing is one which, if genuine, might apparently be of some legal efficacy." Id. 559.

"The general rule is that if the instrument is void it is no crime to forge it. Yet, even in such case, where the paper does not appear to have any legal validity or to show that another might be injured by it, but extrinsic facts exist by

which the owner of the paper might be able to defraud another, then such facts being averred in the indictment would make the forgery of the instrument a crime." For, as Judge Cowen said in *People v. Shall,* 9 Cowen, 778, "An instrument purporting to be void on its face and not shown by the averment to be operative if genuine, is not the subject of forgery." No one can question this law. It is recognized in all the text books as well as in the decisions of the courts of last resort.

It is said, however, that "apparent legal efficiency is enough. It is not necessary that such suit (based upon the forged paper) should have in it the elements of legal success. It is enough if the forged instrument be apparently sufficient to support a legal claim and it is sufficient if the claim be only indirect." 1 Wharton, Crim. Law, 680.

And again, "An instrument to be the subject of forgery must be such that it can be used as proof, either perfect or imperfect, in a suit with another." Id. 691, sec. 91.

"If the instrument is one which could be used in evidence it is held to be one which would make it the subject of forgery.

"The record of such (municipal) corporations are evidence generally. Their acts are of public character and the public is bound by them." See *Weith v. City of Wilmington,* 68 N. C. 34; citing 2 Phillips, Ev. and Greenleaf, Ev., 2d. ed. 484.

"Nor need there be a person capable of being immediately defrauded by the forgery. It is enough if the injury may be possibly inflicted in the future." 1 Wharton, Crim. Law, 694.

This principle is supported by many citations illustrating it in Wharton, sec. 695, of the work above cited. In *Bowles v. State,* 37 Ohio State, 35, it was held that even though the statute under which a forged bond purports to be issued may be declared unconstitutional an indictment for forgery of it would be upheld, and it is enough if there be a probability of fraud.

Chief Justice Fuller in *United States v. Lacher,* 134 U. S. 624, tersely declares the law to be that "Before a man can be punished his case must be plainly and unmistakably within

the statute. But though penal laws are to be construed strictly, yet the intention of the legislature must govern in construction of penal as well as other statutes, and they are not to be construed so strictly as to defeat the obvious intention of the legislature." He cites in this connection Mr. Justice Story and approves the declaration of Mr. Sedgwick in his work on Statutory and Constitutional Law, 282, in which he says "Courts refusing on the one hand to extend the principle to cases which are not clearly embraced in them, and on the other equally refusing by any mere verbal nicety, forced construction or equitable interpretation, to exonerate parties plainly within their scope." Following this rule of construction I find the offense charged in the forgery indictment to be a statutory crime under the law in this state and to be clearly and adequately set out in the indictment.

The motion to quash the indictment is denied, and the defendants are required to plead to the same.

The same order will be entered in the indictments for perjury.[1]

---

*Circuit Court of Cook County. In Chancery.*

---

[1] For the decision on the motion to direct a verdict, see *People v. Loeffler*, 1 Ill. C. C. 381, *supra.*—Ed.