FREDERICK H. LEVY ET AL., PROSECUTORS, v. THE CITY OF ELIZABETH ET AL.

Argued December 14, 1909—Decided January 31, 1910.

1. Where the streets of a city are committed to the care of the municipality, their general use and improvement in the interest of the convenience, comfort and taste of the public is a matter of municipal discretion which will not be interfered with in the absence of its clear abuse, so long as the use is not inconsistent with the public use or a clear invasion of a private right.
2. Where the power conferred is not required to be exercised by ordinance, and the charter is silent upon the subject, the municipal council may exercise it by resolution.

On writ of *certiorari*.

Before Justices REED, BERGEN and MINTURN.

For the prosecutors, *Patrick H. Gilhooly* and *Samuel Koestler.*

For the defendants, *James C. Connolly, J. Edward Ashmead* and *Frederick J. Faulks.*

The opinion of the court was delivered by

MINTURN, J.   The "Elizabeth District Society for the Prevention of Cruelty to Animals" applied to the common council of Elizabeth for permission to locate two drinking fountains in the public streets of that city.   The application,

after consideration by the councilmanic committee, was reported upon favorably, and a resolution granting the application was recommended to the council for adoption; which resolution designated the locations at which the fountains were to·be placed. The resolution was unanimously adopted by the council, and the prosecutors now attack it upon five grounds, all of which may be generalized as an attack in the first instance upon the power to pass the resolution, and secondly, as a denial, that the power, if it exist, was exercised in a legal manner.

The thirty-first section of the charter of the city of Elizabeth (*Pamph. L.* 1863, *p.* 117) confers power upon the city council *inter alia* "to prescribe the manner in which corporations or persons shall exercise any privilege granted to them in the use of any street, highway or alley in said city; or in digging up said street, highway or alley for the purpose of laying down pipes or any other purpose whatever."

The thirteenth subdivision of the same section of the charter provides that the council shall have power "to preserve the aqueducts in said city, and to make and regulate wells, pumps and cisterns in the public streets and squares."

We think the power to pass the resolution *sub judice* was amply conferred by the legislature in these charter provisions. The general trend of authority, based doubtless upon the theory that where the streets of a city have been committed to the care of the municipality by any generic language such as has been employed in this case, is that their general use and improvement in the interest of public convenience, comfort and even æsthetic taste, is a matter of municipal discretion which will not be interfered with, in the absence of a clear abuse of that discretion, so long as the use is not inconsistent with the public right or a clear invasion of a private right. It is upon this theory that streets are cleared of obstructing wagons lying idle; that sheds are removed from over sidewalks, and vendors' stands are ejected; and that statues, memorial shafts and the like are erected, and floral patches are planted upon city highways in the public interest. *Tomlin* v. *Cape May,* 34 *Vroom* 429; *Budd* v. *Camden Horse*

*Railroad Co.*, 16 *Dick. Ch. Rep.* 543; *Halsey* v. *Rapid Transit Railway Co.*, 2 *Id.* 380; *Robert* v. *Powell*, 168 *N. Y.* 411; *Blair* v. *Chicago*, 201 *U. S.* 400.

The test of unreasonable use really is whether the street, by the proposed action, is to be devoted to a purpose inconsistent with its public use as a street. *Tompkins* v. *Hodgson*, 2 *Hun* 146; *State ex rel.* v. *Cincinnati Gas Co.*, 18 *Ohio St.* 262; 28 *Cyc.* and cases cited.

We do not find in this case that the erection of these fountains in accordance with this resolution is inconsistent with the rights of the public in the street; but that such use may be considered from the standpoint of the humanitarian spirit which induced the gift, and which may be said to be in line with the growing demands of an enlightened public policy, rather than as a purpresture or an unlawful invasion of the highway. *Wallace* v. *Canandaigua*, 117 *N. Y. Sup.* 912; *Tompkins* v. *Hodgson, supra.*

The power conferred by this resolution was not in the nature of a concession of any public right in the street which would require the passage of an ordinance to effectuate it; nor does the power conferred by the charter for this purpose prescribe that it shall be exercised by ordinance; and in the absence of these requirements it was competent for the council to exercise the power by resolution. Thus, it has been held by the United States Supreme Court that where the charter of a city commits the decision of a matter to the council, and is silent as to the mode, the decision may be evidenced by a resolution and need not necessarily be by an ordinance. *Board of Education* v. *DeKay*, 148 *U. S.* 591.

We find no authority for the claim that abutting property owners were entitled to be heard upon this resolution before its adoption. No private right was interfered with by its passage, and no additional servitude was thereby imposed upon abutting property owners. *Van Horne* v. *Newark Passenger Railway Co.*, 3 *Dick. Ch. Rep.* 332.

Upon the question of the capacity of the donee, we find also that the society was incorporated under the provisions of the act of 1868, as amended in 1893; and that in 1908

(*Pamph. L., p.* 183), a validating act was passed, under the provisions of which the defective incorporation of the society was made valid and effectual.

The writ should be dismissed.