## In re KETCHIKAN DELINQUENT TAX ROLL.

(First Division.  Ketchikan.  July 27, 1922.)

No. 537–KA.

**1. Municipal Corporations** ⚖➡292(3), 301, 519(1)—**Taxation.**

Less than two-thirds of the property owners along Harris street extension, Ketchikan, Alaska, petitioned the city council to construct the street at the cost of the property owners. The objectors did not sign the petition. The city council did not hold any hearing, or make any finding, or pass any resolution or ordinance authorizing the work, but did construct the street by contract, and thereafter by its resolution levied a special assessment upon the property abutting only on one side of the street to pay for the improvement. The objectors, Mary A. Furnivall and J. M. Peterson, appeared before the district court on application of the town to confirm the assessment and order a sale of the property to pay for the work, and filed their objections to confirmation upon the failure to comply with the statute.  Section 627, Comp. Laws Alaska 1913, amended by chapter 50, Sess. Laws Alaska, 1919, *Held:* (1) A petition signed by two-thirds in value of the property owners is jurisdictional, and without it the proceeding is illegal as to nonconsenting property owners. (2) Where an improvement of a public street in an incorporated town by assessing property owners for the cost thereof is undertaken, it must be done and authorized by a formal resolution or ordinance, and a failure to so authorize and order the improvement renders any special assessment on abutting property illegal. (3) The lien on special assessment for the improvement of a street in an incorporated town in Alaska is not against the nonconsenting owner or his right of possession, but against the property itself, and where the legal title to the property is in the United States it cannot be so assessed.·

⚖➡See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Municipal Corporations** ⚍449(3), 455, 493(1), 488, 489(3)—**Sewer Assessments.**

> The town of Ketchikan, Alaska, procured the construction of a sewer on a public street upon the petition of the property owners along the same. There was no notice given to the property owners of the contemplated construction, no hearing to determine damages or benefits, and no resolution or ordinance passed by the town council making findings or ordering and authorizing the construction of the work. After the contractor with the city had finished the work, the town council by resolution assessed the cost thereof upon the abutting property, and on application to the district court to confirm the assessment and order sale of the property to pay delinquent assessments certain property owners appeared and objected. Two of the objectors signed the petition asking for the improvement; the others did not. As to the nonpetitioning objectors, *held*: (1) The property assessed must be described with reasonable certainty, and the failure to so describe it renders the assessment void. (2) Some notice must be given to nonpetitioning property owners or some opportunity to be heard before an assessment can be levied upon their property for sewers, and the property sold to pay delinquent tax. (3) Such nonpetitioning property owners have the right to object to a confirmation of assessment against their property, and to insist upon any defect in the proceedings anterior to the assessment itself, because of no ordinance or resolution providing for the improvement, which is necessary as an initiatory step under Sec. 628, Comp. Laws Alaska 1913. (4) Where a property owner, the mayor of a town, directly petitions the town council to improve the street in front of his property by constructing a sewer, and was cognizant of all the proceedings, and urged others to join in the same, and the sewer was constructed under his direct supervision, he will not be heard to object to the confirmation of the assessment and an order of sale of his property to pay the delinquent tax.

On May 20, 1922, the delinquent assessment tax roll of the city of Ketchikan for the year 1921 was presented under the provisions of chapter 69 of the Session Laws of Alaska of 1913, for adjustment and order of sale of the property therein described. At the same time there were presented several delinquent special assessment rolls for improvements made by the city under subdivision 4, section 627, Compiled Laws of Alaska 1913, and an application that an order of sale be entered of the property mentioned therein as abutting on the respective improvements.

⚍See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

No objections were made to the general delinquent tax roll of 1921, and an order of sale was directed to issue as provided by the statute for the properties therein described on which the tax was delinquent; but objections were interposed to two of the special assessments, and the regularity of the whole proceeding leading up to the special assessment was vigorously assailed by counsel for the objectors.

W. H. Winston, of Ketchikan, for town of Ketchikan.

Wickersham & Kehoe, of Juneau, for Harris street objectors.

A. H. Zeigler, of Ketchikan, for sewer objectors.

REED, District Judge. The first of these special assessments to which objection was interposed is what is called the "Harris street extension" or "North Harris street assessment," and the second is what is commonly known as the "Bawden street sewer assessment," and while the objections in each case are in most respects similar, yet the facts involved are so dissimilar that each assessment must receive a separate consideration.

Harris Street Extension Assessment.

The objections to the assessment for this improvement are presented by Mary A. Furnivall, claiming to be the owner of the right of purchase under the Townsite Act (26 Stat. p. 1095) of lots 1 and 3 of block 3 of the United States government addition to the townsite of Ketchikan, and lot 11, block E, of the Schoenbar addition to the city of Ketchikan, and J. M. Peterson, who claims to have the preference right of purchase under the Townsite Act aforesaid to lot 2 of block 3 of the Townsite addition.

The objections presented include questions both of law and fact and are in effect: That two-thirds of the abutting owners in value along the line of the improvement did not petition therefor, as required by subdivision 4, section 627, Compiled Laws of Alaska; that no finding was made by the common council to the effect that two-thirds of the owners in value along the line of the proposed improvement had petitioned therefor; that no ordinance or resolution was adopted by the common council providing for such improvement and assessment against the abutting owners; that the property in block

3 so assessed and owned or claimed by the objectors is the property of the United States, and therefore the land is not assessable; that the right of purchase claimed by objectors under the Townsite Act of the United States is a personal right and not a right in the property, and is therefore not assessable; that the assessment is not levied on all the property abutting on the proposed improvement, but only against property on the north side of the line of the improvement, nor was the assessment made according to benefits to or according to the value of the abutting property, nor was it made according to the front footage of the property abutting on the proposed improvement, but was an arbitrary assessment without regard to the value of the property or the front footage along the improvement; and that at no time were the objectors afforded an opportunity to object to or protest against the improvement referred to or to the assessment.

The Harris street extension, so called, is a causeway largely built on piling along the north bank of Ketchikan creek, and follows closely the meandering of that stream. The street at intervals extends over the stream bed, and some of the property on the north side of the extension has for a number of years been occupied as homes by residents of the city, while that on the south side of the improvement is either in the stream bed or along a steep bluff, the side or bank of the creek.

It appears from the testimony that a number of years since the land through which the Harris street extension is established was located as a mining claim, and in the course of the improvement and operation of the mining property, one Schoenbar constructed a tramway along the north bank of Ketchikan creek and practically along the line where the extension is now situated, for the purpose of transportation of ores and supplies to and from the mining property. This tram was used by the public as a means of travel, and a number of people settled on the mining claim and built their homes on the north side of the tramway.

In the course of time the tramway became out of repair, and a number of the residents along the line thereof petitioned the city council of Ketchikan to improve the tramway, by constructing a street from the intersection of Harris street along the north side of Ketchikan creek to the city limits of

the mean width of 20 feet. This petition was filed with the city council on January 15, 1919, but no action was taken thereon. On September 2, 1920, a second petition for improvement was filed with the city council, praying that a temporary street be constructed and maintained for vehicle passage 16 feet in width, with a 4-foot sidewalk following the course of and upon the right of way of the Schoenbar tram. This petition was filed with the city council, but no action was taken thereon. It appears that J. M. Peterson, one of the objectors, signed this petition. On October 5, 1920, a third petition was filed, praying the city council—

"to construct a 16-foot plank roadway and a 4-foot sidewalk, and to lay out and establish a 40-foot right of way from present Harris street in front of the Parker House to and past the Harry Smith house, or to the city limits."

The petitioners therein agreed to pay the city of Ketchikan their proportionate shares of two-thirds of the cost of the improvement and that such sums should be a lien on their respective properties. This petition was signed by eight persons, all, as appears from the testimony, residents along the north side of the proposed improvements. There were no petitioners residents or owners of property on the south side of the street. The objectors, Mary A. Furnivall and J. M. Peterson, did not sign this petition. This petition was filed with and approved by the city council on October 5, 1920.

There is no affirmative action appearing of record relative to the petition of October 5, 1920, although some action must have been taken thereon, since the city engineer made a survey of the proposed improvement about that time, and a causeway or street was constructed in accordance with plans prepared and furnished by him.

Thereafter the city council at its regular meeting on February 2, 1921, adopted a resolution assessing the real property and possessory rights of certain named persons according to their respective alleged front footage on the northern side of and along the line of said improvement for two-thirds of the cost thereof, and provided that such assessment should be a lien on the property, payable in 10 days. No assessment was made against the property abutting on the south side of the improvement.

6 A.R.—42

J. M. Peterson was one of the persons named, and J. W. Furnivall was also assessed; J. W. Furnivall being the husband of Mary A. Furnivall, the objector.

On February 2, 1921, a protest was filed against said assessment by the objectors, J. M. Peterson, Mary A. Furnivall, and others, alleging that all the abutting owners had not been assessed, and that the petition under which the work was carried out had not the support of sufficient interest. This protest or remonstrance was laid on the table on March 2, 1921.

It appears that in the year 1908 an application for patent from the United States was made before the United States land office for the mining claims over which the Schoenbar tram was constructed, and a certificate for patent was issued for the Florida claim, being that part of the land over which the westerly part of the tram had been constructed; while the easterly, or upper, part of the tram ran over another mining claim which was not patented, and the land therein included reverted to the United States, free from any mining claim. Lot 11 of block E, assessed to Mary A. Furnivall, is a part of the Florida claim; while lots 1, 2, and 3 of block 3, assessed to Mary A. Furnivall and J. M. Peterson, are a part of the other claim reverting to the government of the United States, and at the time the petition of October 5, 1920, was filed with the city council, and at the times of the subsequent improvement and assessment no street had been laid out over this claim, nor was the property laid out into lots and blocks. Whether Mary A. Furnivall was the owner of lot 11, block E, of what appears now to be the Schoenbar addition, at this time, does not appear from the testimony, except that in 1918 she succeeded to the rights of F. J. Furnivall thereto. It appears from the testimony that on April 15, 1921, a part of the Florida mining claim was surveyed into lots and blocks, streets and alleys, as the Schoenbar addition to the city of Ketchikan, and on the plat thereof is shown what is called "North Harris street," a street from 30 to 32 feet in width, and extending along the line of the old Schoenbar tram, from the southerly side line to the easterly end line of the Florida claim. Whether or not the streets or alleys set forth on the plat had been formally dedicated to the public is not shown by the testimony, but lot 11, block E, claimed by Mary A. Furnivall, is shown thereon as having a front footage of 37.79 feet on North Harris street.

On May 31, 1921, the government completed United States survey No. 1381, which comprised part of the public domain formerly included in the abandoned mining claim hereinbefore referred to. This survey was made under the provisions of the Act of March 3, 1891, known as the Townsite Act (26 Stat. at Large, 1095), and the survey so made laid out the property included therein into streets, alleys, lots, and blocks, and is known as the "Ketchikan Townsite addition." Lots 1, 2, and 3 of block 3 are shown thereon; lot 2 (claimed by Peterson) having a frontage of 34 feet, and lots 1 and 3 (claimed by Mary A. Furnivall) having a frontage of 42 feet and 92.68 feet, respectively, on the street therein designated as North Harris street, being the same street known as the "Harris street extension." It is shown by the evidence that the title to the three lots in this addition had not, at the time of the hearing before the court, been conveyed by the townsite trustee to private owners; hence at the time of the hearing no title to the lots in the Ketchikan Townsite addition was in Peterson or in Mary A. Furnivall, but was still in the United States, the claims of Peterson and Mrs. Furnivall being merely a preference right of purchase because of occupancy of the land.

On November 5, 1921, the Ketchikan Consolidated Mines Company executed a deed of right of way for a public road over a portion of the Florida mining claim covering—

"a strip of ground beginning at the southerly end of Harris street, so called, where it enters the Florida mining claim, and continuing across said Florida mining claim, with a width bounded by the westerly side of said street as platted by Joseph Ulmer, C. E., on the one side and the middle of Ketchikan creek on the easterly side."

By this deed an easement for right of way following the line of North Harris street of a varying width was conveyed to the city, but the fee still remained in the grantor.

Thereafter, on December 21, 1921, the city council at a regular meeting adopted the following resolution assessing the property along the Harris street extension for the improvement thereof:

"Resolution.

"Be it resolved by the common council of the city of Ketchikan, Alaska, that, whereas a recheck has been made of assessment levied

against the property owners fronting on Harris street in said city; and whereas, such recheck has been made in accordance with established property lines fronting on said street: It is therefore hereby resolved by the common council that the resolution heretofore hereby made on the 2d day of February, 1921, be and the same is hereby repealed and set aside; said resolution levying assessments against the property owners and property abutting on Harris street.

"And it is hereby resolved, that the several sums set after the name of certain persons and the real property owners or occupied by them under possessory rights or otherwise, which property abuts on the Harris street extension in the city of Ketchikan, Alaska, be and the said sums are hereby assessed against said persons and said land owned or occupied by them as aforesaid, for two-thirds (⅔) of the expense of the construction of said street, the number of front feet of property abutting upon said improvement is hereinafter more fully set forth:

| | | | |
|---|---|---|---|
| F. J. Furnivall, | 92.68 ft. frontage | .................. | .$353.10 |
| J. M. Peterson, | 34   "      " | .................. | 129.50 |
| F. J. Furnivall, | 42   "      " | .................. | 160.00 |
| F. J. Furnivall, | 37.79  "      " | .................. | 144.00 |

"Be it further resolved, that the foregoing sums so assessed against said persons and said land abutting thereon as above set forth be and the same are hereby made a specific lien upon said land; and such assessments shall become due and payable to the city treasurer of the city of Ketchikan immediately upon the adoption and approval hereof, and from and after January 1, 1922, the same shall bear interest at the rate of 8 per cent. per annum, and said interest shall be a lien on said property abutting on said improvement. And the collection of such assessments may be enforced by suit or collected in the same manner as other delinquent taxes.

"And it is further resolved that all payments made on the former assessment roll shall be applied towards the payment of the above assessments."

Thereafter the city council caused to be published a notice of application to the court for an order of sale of the property so assessed on which the tax had not been paid. Lot 11, block E, Schoenbar addition, and lots 1, 2, and 3, block 3, Townsite addition, assessed to J. M. Peterson and F. J. Furnivall, appear as part of this property.

From the testimony it appears that, at the time of the filing of the petition on which the improvement was made, there was no street dedicated to the public use on which the improvement so proposed was to be constructed; that no ordinance or resolution was adopted by the city council opening up a street or authorizing the improvement specified; that

no finding was made by the city council that two-thirds of the owners of property in value affected by or abutting on the proposed improvement had signed a petition therefor; that it further appears that two-thirds of the owners in value of property along the line of the proposed improvement did not petition therefor; and that the objectors, Mary A. Furnivall and J. M. Peterson, did not petition for the improvement. It further appears that, when the assessment of December 3, 1921, was made, the title to the land in the Government Townsite addition had not passed from the United States.

Subdivision 4 of section 627 of the Compiled Laws of Alaska provide that the common council of the city shall have power to provide for the location, construction, and maintenance of the necessary streets, alleys, crossings, sidewalks, and sewers, and if such street, alley, sidewalk, or sewer, or part thereof, is located or constructed upon the petition of the owners of two-thirds in value of the property abutting on and affected by such improvement, then two-thirds of the cost of the same may, in the discretion of the council, be collected by the assessment and levy of a tax against abutting property, and such tax shall be a lien on the same, and may be collected as other real estate taxes are collected.

Section 628 provides that the common council may exercise their powers by ordinance or resolution, but no ordinance or resolution shall be valid unless adopted by a vote of four members of the council at a meeting where five are present.

Subdivision 14 of section 627 provides that the common council may take such action by ordinance, resolution, or otherwise as may be necessary to protect and preserve the lives, health, safety, and well-being of the people of the town and to publish all ordinances.

The statute authorizing the opening up and improvement of streets and assessing the cost thereof on abutting owners is general in its terms, and gives a discretion to the city council as to the assessment against abutting owners when a petition of two-thirds of the owners in value shall have been made therefor. This discretion, however, can be exercised only when two-thirds of the owners in value of the property abutting on or affected by the proposed improvement have petitioned therefor. This necessitates, therefore, a finding by the city council that the proper number of owners have petitioned

for the improvement before an assessment can be made against the property of persons not binding themselves to pay their proportionate share of the expense of the proposed improvement.

Had the city council, by ordinance based upon the petition, provided for the improvement and specified therein that two-thirds of the cost would be assessed against the abutting owners, there would arise a strong presumption that the necessary number of petitioners had prayed therefor. Here nothing was intimated by the council to the public or abutting owners not parties to the petition that their property would be assessed, and as far as their knowledge appears the city council may have proposed to construct the street at public expense.

It is shown clearly that two-thirds of the property owners abutting on the proposed Harris street extension had not petitioned therefor. This is jurisdictional, and as to the non-consenting owners the whole proceedings are illegal.

The further question as to the necessity of an ordinance, while not necessary to decision of objections in the case, is, in my opinion, well taken.

The counsel for the city argue that, under subdivision 14 of section 627 of the Compiled Laws above cited, it is not necessary for the city council to proceed by ordinance or resolution to construct or improve a street and assess the abutting owners for two-thirds of the cost thereof. I cannot agree with this position. Undoubtedly many cases of repair or improvement may arise when it is not necessary for the council to adopt an ordinance or resolution providing therefor. These cases are where the rights of third parties or the public are not involved, or cases where the work is not chargeable against property, or where property rights are not involved. In many cases minor repairs may be necessary, or minor improvements made, where an ordinance or resolution authorizing such repairs and improvements is not necessary. In such cases the repairs or improvements may be made without formal declaration by the council. They may be provided for under the general authorization conferring the power to act on the municipal executive officers. This method of procedure is provided for by the statute, when it uses the word "otherwise"; but, where an improvement is made of a character such as

the opening of a street and assessing property owners for the cost thereof, there must be a formal resolution or ordinance, preferably the latter, as provided by section 628 of the Compiled Laws. This section provides that the common council may exercise their power by ordinance or resolution. The word "may," as used in the section, while permissive in form, should be construed as mandatory, where the rights of third parties or the public are involved.

In the case of Supervisors v. United States, 4 Wall. 446, 18 L. Ed. 419, the Supreme Court says:

"The conclusion to be deduced from the authorities is that, where power is given to public officers, * * * whenever the public interest or individual rights call for its exercise, the language used, though permissive in form, is, in fact, peremptory."

In Boad of Education v. DeKay, 148 U. S. 591–598, 13 Sup. Ct. 706, 709 (37 L. Ed. 573) the court states that:

" * * * The general rule is that, where the charter commits the decision of a matter to the council, and is silent as to the mode, the decision may be evidenced by a resolution, and, need not necessarily be by an ordinance."

*When power to make improvements is conferred in general terms, the municipality may exercise the same only by formal legislative action on the part of the city council.* 28 Cyc. 992.

The fourth subdivision of section 627 authorizes the city in general terms to provide for the construction of streets and improvements on assessment of two-thirds of the cost thereof, when petitioned for by a certain ownership of the property affected thereby and abutting thereon. Therefore legislative action must be taken by the city council to determine the necessity of the improvement, and a finding made by the city council that the necessary number of property owners have petitioned therefor. This can only be done by ordinance or resolution. 17 Am. & Eng. Ency. of Law, p. 236, note 2; Eckert v. Town of Walnut, 117 Iowa, 629, 91 N. W. 929.

There is no showing that an ordinance or resolution was passed by the city council, either by the minutes of the council or by the oral testimony submitted at the hearing.

A discretion is given the city council to determine whether the cost of a public improvement shall be borne wholly by the city at large or two-thirds thereof by the abutting property. At the time the improvement is decided upon by the coun-

cil, it should also determine how the cost thereof should be borne. If this is not done, the whole proceeding would be left to the decision of a city council after the work is finished, without opportunity to the property owners to protest or object.

As is said in Eckert v. Town of Walnut, supra:

"If no ordinance or resolution were required in such cases [altering and establishing grades of streets], the owner of such property would be practically at the mercy of the ever-changing personnel of the city or town government, and his property rights and values might be shifted at their own sweet will, because of his inability to show their unrecorded vagaries."

The case at bar shows the necessity of an ordinance. No notice of the manner of the proposed improvement was given the objecting property owners; no opportunity to protest or object before the improvement was contracted for; an assessment was levied by a subsequent council without prior notice or any equalization or opportunity for the owners of property to be heard. The proceedings were irregular, and cannot be sustained.

It further appears that the assessment as to lots 1, 2, and 3 of block 3, Townsite addition, is against the possessory right of F. J. Furnivall and J. M. Peterson. The former disclaims any possessory right to lots 1 and 3, and testimony shows the title, if in any one, is in Mary A. Furnivall.

Section 627, Compiled Laws, provides that the assessment shall be a lien on the property abutting on the improvement. The lien provided for in the statute is not against the owner or his right of possession of the property, which is personal, but against the property itself. The legal title to this property lies in the United States and cannot be assessed.

For the reasons stated, the objections of Mary A. Furnivall and J. M. Peterson will be sustained, and the order of sale of lot 3, block E, Schoenbar addition, and lots 1, 2, and 3, block 3, Townsite addition, will be denied.

### The Bawden Street Sewer.

The improvement was for the emplacement of a sewer following approximately the line of Bawden street, from Pine to Grant streets, and, at the intersection with the latter, entering block 23 and continuing across that block, Harris street,

and block 17, into Ketchikan creek. There is also a lateral sewer, extending from the main sewer up Grant street, along the property of R. L. Petty, James Shelton, and A. Hendrickson.

As originally petitioned for, there was contemplated a system of two sewers, following generally the line of two deep gulches, one of which is the sewer as at present constructed, and the other, following the course of a gulch about 50 yards to the east of the present sewer, has not been constructed, and apparently the project for a sewer down this easterly gulch has been abandoned.

The objectors to the assessment and order of sale for the cost of the Bawden street sewer are R. L. Petty, J. M. Wyckoff, Mrs. M. Harvey, A. Hendrickson, James Shelton, and A. J. Groelinger. No objection is raised as to the sufficiency of the petition for the improvement; it being conceded that two-thirds in value of the property abutting on the improvement are on the petition. The objections, however, are: That no ordinance or resolution was passed by the council providing for or showing the necessity of the improvement, or providing how the same should be paid; that the property abutting on the improvement was not properly assessed according to the benefits; that the assessment was not uniform; and that no notice thereof was given. The petition for the improvement was signed by two of the objectors only, R. L. Petty and J. M. Wyckoff. None of the other objectors were parties thereto. It is shown that the assessment and lien is claimed against a lot in the Florida mining claim owned by J. M. Wyckoff, and Mrs. Mary Harvey is also assessed for a lot in the Florida mining claim. No other description or designation of the property is given on the duplicate assessment roll, or in the notice of application for order of sale, against these two objectors, than the words: "Lot ——, Florida Mining Claim."

As heretofore stated, under the statute the assessment is against the property abutting on the improvement, and becomes a lien on the property. It is not a personal assessment against the owners of the property. It is fundamental that, to create a lien on real estate, the property must be described with reasonable certainty, sufficient for identification. In this case, neither in the resolution levying the assessment,

nor in the assessment roll, nor in the notice of the application for an order of sale, is there any description identifying the property on which the lien is claimed for which an order of sale is sought in the case of the objectors J. M. Wyckoff and Mrs. Mary Harvey. Each of them may own several lots in the "Florida mining claim," any one of which might be sold under an order of sale describing the property to be sold as a lot in the Florida mining claim. *The property assessed must be described with reasonable certainty.* 38 Cyc. 1164. Any order of sale describing the property as shown in the assessment roll would be useless. This, in itself, is valid ground for denying the order of sale, without consideration of any further of the points raised. The objection of Mrs. Mary Harvey and J. M. Wyckoff to the order of sale will therefore be sustained, and the order denied as to them.

The general objection that there was no ordinance or resolution providing for the sewer advanced in the Harris street extension matter applies in this, the Bawden street sewer, and, unless estopped, the objectors may raise any question in regard to the validity of the proceeding anterior to the assessment.

R. L. Petty, who alone of the objectors testified relative to the sewer work, was mayor of the city of Ketchikan at the time of the initiation of this sewer improvement and was one of the prime movers therein. He signed the petition therefor, induced others to join therein, and was cognizant of all the proceedings. The sewer was constructed under his direct supervision, and he well understood that it was contemplated that two-thirds of the cost of the improvement would be assessed against the abutting property. He is the owner of lots 16 and 17, block 13, fronting 100 feet on Bawden street and 100 feet on Grant street, and his property abuts on both the main Bawden street sewer and the lateral sewer on Grant street. He comes directly under the rule announced by the Supreme Court of the United States in Shepard v. Barron, 194 U. S. 567, 24 Sup. Ct. 742, 48 L. Ed. 1115, and the authorities therein cited. The court in that case says:

"Under some circumstances a party who is legally assessed may be held to have waived all right to a remedy by a course of conduct which renders it unjust and inequitable to others that he should be allowed to complain of the illegality. Such a case would exist if one should ask for and encourage the levy of the tax of

which he subsequently complains; and some of the cases go so far
in the direction of holding that a mere failure to give notice of
objections to one who, with the knowledge of the person taxed, as
contractor or otherwise, is expending money in reliance upon pay-
ment from the taxes, may have the same effect."

As to Shelton, Hendrickson, and Groellinger being estopped
a different question arises. Under the facts shown at the
hearing, none of these parties were signers of the petition.
There is no testimony that any of them participated in or en-
couraged the building of the sewer, or had any knowledge
that their property was to be assessed for two-thirds of the
cost of the improvement thereof. It is argued by counsel for
the city that they are estopped to raise any objection because
of their silence in permitting the work to proceed without rais-
ing any question as to the irregularity of the proceedings.
I am unable to concur in this view of the law.

The rule laid down by the authorities as to estoppel by si-
lence is thus summed up in Tone v. Columbus, 39 Ohio St.
303, 48 Am. Rep. 438, which case is cited with approval by
the Supreme Court in several leading cases:

"When the improvement is of a public street upon which the
owner's property abuts, before the duty to speak can be said to
exist, which is so imperative that if he keeps silent then, he shall
not afterwards be heard, it must be shown:

"First. That he knew the improvement was being made. *  *  *

"Second. That he had knowledge that the public authorities in-
tended, and were making the improvement upon the faith, that the
cost thereof was to be paid by the abutting property owners, and
that an assessment for that purpose was contemplated. *  *  *
Because cities may improve the public streets out of the general
fund and without a special assessment.

"Third. That he knew of the infirmity or defect in the proceed-
ings, under which the improvement was being made, which would
render such assessment invalid and which he is to be estopped
from asserting.

" 'At least, in the absence of any evidence of previous knowledge
on his part of their unlawful action, he is in time with his protest,
when they proceed to deprive him of his rights under such pro-
ceedings.' *  *  *

"Fourth. Some special benefit must have accrued to the owner's
property, distinct from the benefits enjoyed by the citizens gen-
erally."

In the case at bar no opportunity was afforded these ob-
jectors prior to the assessment to protest against the work;

no notice was given them that their property would be assessed for any part of the cost of the improvement. There is no showing by the city in the testimony that they had knowledge that the city contemplated assessing the cost of the improvement against the abutting property and there is no. showing that they had any knowledge of the defect in the proceedings. They have therefore the right to object and insist upon any defect in the proceedings anterior to the assessment itself because of no ordinance or resolution providing for the improvement and assessment of the abutting property, which I deem necessary as an initiatory step under section 628 of the Compiled Laws. The objections of James Shelton, A. Hendrickson, and A. J. Groelinger will be sustained, and the order of sale as to their property denied.

Turning to the objection as to the inequality of the assessment in this case, the counsel for the objectors specified several pieces of property which they allege abutted on the improvement and were not assessed by the city council in making up their assessment roll. Among these instances are the cases of Mrs. Wesley Meyers and Laura Nelson, owners of lots 1 and 2 of block 3 of the city of Ketchikan. The testimony shows that the sewer opposite this property runs through private property some 20 feet distant from the rear of the above-described lots, and that the city council considered the property of Mrs. Meyers and Laura Nelson as not abutting on the improvement, and therefore not assessable. I see no reason to differ from the view of the city council in this respect.

Another instance is the case of lots 3, 4, and 5, block 22. In this case the testimony of the city engineer discloses that these lots are situated on a ridge between the two gulches heretofore mentioned, and that the natural drainage from these lots is to the eastward, to the easterly gulch, and not to the sewer which was constructed; that it was originally intended that the sewage from these lots should be directed into the sewer contemplated to be constructed in the easterly gulch; that to connect with the sewer as constructed along Bawden street would entail a prohibitive expense on the owners of the lots. It further appears that in assessing the cost of the improvement the city council took into consideration the benefit or lack of benefit to the several lots along the line of the sewer. In my opinion the city council was authorized to con-

sider the benefits or lack of benefits to each lot along the line of the sewer in making the assessment. The authorities are somewhat in conflict upon this proposition. As was stated in 28 Cyc. p. 1128:

"In some cases it has been held that an assessment may be sustained, although it is not based upon a corresponding benefit, but such decisions are in conflict with reason and the weight of authority. The municipal authorities have, however, much discretion in determining what property is benefited by an improvement."

In the case of Monk v. City of Ballard, 42 Wash. 35, 84 Pac. 399, where the ordinance provided for an assessment district and authorized the assessment of property contiguous or approximate to any street on which the line of the sewer was laid. Appellants claimed that their property was not contiguous or approximate to any street occupied by the sewer. The court therein said:

"Where the improvement is a sewer, it would seem there could be no intent to pay for it by a special assessment, unless the property be so situated as to be capable of using the sewer or of deriving from its construction a special advantage different in character from that enjoyed by the public generally. In order for a sewer to be susceptible of use to a given parcel of land, there must be access from said land to said sewer without passing through the property of other individuals."

This apparently was the view taken by the city council of Ketchikan, and rightfully so, in the case of the making of this assessment.

As shown by the evidence, there were no special benefits to lots 3, 4, and 5 of block 22, not enjoyed by the public generally, in the construction of the sewer, and those lots should not be assessed.

For these reasons, the objections of Mr. Petty to the order of sale of lots 11 and 12, block 13, are overruled, and the order of sale will issue.

Let findings and order issue in accordance herewith.