**ASHLEY et al. v. CITY OF ANCHORAGE et al.**

No. A–6622.

United States District Court
Alaska, Third Division, Anchorage.

Jan. 29, 1951.

George M. McLaughlin, Anchorage, Alaska, for plaintiffs.

Hellenthal, Hellenthal & Cottis, Anchorage, Alaska, for defendants.

DIMOND, District Judge.

This suit was brought by the plaintiffs to enjoin the City of Anchorage and its Mayor and other officials from enforcing the collection of a special assessment for the construction of a sewer made upon a City lot owned by the plaintiffs. It is now before the Court upon plaintiffs' motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S. C.A. and defendants' like motion for sum-

mary judgment made at the conclusion of the argument.

The controlling statutory provisions are to be found in Sections 16–1–81, 16–1–82, and 16–1–83, Alaska Compiled Laws Annotated 1949, hereinafter referred to as ACLA, which read as follows:

"16–1–81. Improvements for which assessment authorized: Property benefited: Amount of assessment: Owners' request for improvement. The council may assess against the real property specially benefited by such improvements two thirds of the cost of laying out, grading, constructing or repairing any street, alley or sidewalk, constructing or repairing any sewer or drain, acquiring and constructing parks or play grounds or making changes in channels of streams or water courses or constructing, erecting, strengthening or repairing, bulkheads, embankments or dikes for such streams or water courses. Such costs shall be assessed against the real property specially benefited in proportion to the benefits so received by each tract of land. Provided, however, that no such assessment shall be levied for any improvement unless such improvement be in writing requested of the city council by the owners of at least one half in value of the property to be so specially benefited by such improvement. The expense so assessed may include the cost of the city of acquiring premises for such improvements."

"16–1–82. Council to determine necessity of improvements and sufficiency of petition: Findings: Forgery. When such request is presented to the council the same shall be filed and the council shall determine (1) whether the improvement requested is necessary and should be made, (2) whether the request is signed by all the owners of at least one half in value of the property specially benefited by such improvement and shall pass a resolution containing the council's findings on such questions, which findings shall be conclusive save and except that anyone who signs the name of another to such request without written power of attorney so to do, or who shall procure, solicit, aid or abet or induce another to do so, shall be guilty of forgery and shall be punished accordingly."

"16–1–83. Decision of council as to improvement and assessment. If the council find that the improvement is necessary and that the request has been signed by the owners of at least one half in value of the property to be specially benefited, the council may also decide that any part of the cost of such improvement, not, however, to exceed two-thirds thereof, shall be (the) assessed against the real property so benefited in proportion to the amount of such benefits received, by each tract of property."

The undisputed record shows that on April 29, 1949, the Council enacted Ordinance No. 1007, which, among other things, obliged the City to levy the assessment to repay bonds to be issued for construction of the sewer. On July 1, of the same year, the contract for the construction of the sewer was let. In the meantime, after April 1, 1949, and prior to July 1, 1949, petitions were circulated and signatures obtained of a majority in number of the property owners asking for the construction of the sewer and consenting to the levy of the assessments now challenged. That petition was not signed by the plaintiffs in this action. However, it seems certain that the petitions were before the Council on July 1, 1949, when the work was authorized. Nothing in the minutes of the Council indicates that any action was taken on the petitions or with respect to them at that time.

It was not until March 2, 1950, that the resolution was passed in conformity with the requirements of Section 16–1–82, finding the petition sufficient and the improvements necessary. In the meantime, as shown by Section 201.1 of the Anchorage General Code, of which the Court must take judicial notice, Section 55–5–12, ACLA, an election was scheduled to be held on October 4, 1949, for the election of two members of the Council. Accordingly, it appears that the Council which passed the resolution of March 2, 1950, was not the identical council which authorized the work

even though, through re-election, the membership may have been the same.

Plaintiffs urge that the detailed requirements of Section 16-1-82 are mandatory and that those steps must be taken in order before the levy can be made and the work carried out, and that failure in such respect makes the assessment void. Defendants assert that the provisions of the Section are not mandatory, but directory only, and hence not essential to the validity of the assessment and levy.

 ACLA is a compilation only and not positive law, and, therefore, it is necessary to go to the source of the statute. The three sections above quoted are part of Chapter 97 of the Session Laws of Alaska 1923, Section 16-1-82 appearing as Section 64 of Chapter 97. Reference to the Session Laws shows that as enacted, Section 64 contained the following heading: "Council *Must* Determine Necessity of Improvement and Sufficiency of Petition." (Emphasis supplied.) No suggestion is made that the title of the Section was ever changed by legislative enactment, but in the compilation now to be found in ACLA, the word "must", as embraced in Chapter 64, has been editorialized to the word "to" in Section 16-1-82. Note is made of the change so brought about without legislative action because it may throw some light upon the purpose and intent of the legislature. In the body of the Section, we find that the Council "shall" take the steps prescribed therein as preliminary to the making of the assessment. While the word "shall" may be construed as permissive rather than mandatory, there is nothing in the statute under consideration to require it. Attention has been invited to the text of 6 McQuillin on Municipal Corporations (3rd Ed.) 141, and to 50 Am.Jur 53, in support of the suggestion that "shall" ought to be construed as "may". However, the limitations of the doctrine are accurately pointed out in 50 Am.Jur. 54, as follows: "The rule applies where no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to the individual, by giving it such construction. * * * The courts are, however, reluc-

tant to contravene or construe away terms of a statute which in themselves are mandatory, except where the intent and purpose of the legislature are plain and unambiguous and clearly signify a contrary construction."

The defendants further suggest that only substantial compliance with the statute is indispensable, 14 McQuillin on Municipal Corporations (3rd Ed.) 264, 48 Am.Jur. 683, and that the order in which several steps are taken is of no material consequence, City of Lowell v. Lowell Building Corporation, 1941, 309 Mass. 165, 34 N.E.2d 618, 621, in which it is held that an order of the council made after the work was completed "may properly be held to have been a ratification of the work previously done, and a subsequent ratification is the equivalent of original authority." But nowhere in the opinion of the Lowell case are to be found the applicable statutes or the ordinances upon which the decision is based.

No matter how persuasive and even convincing may be the reasoning advanced by the defendants here, and underlying the decision in the Lowell case, plainly designed to uphold the public interest without injustice to any individual, this Court in this action is controlled by the opinion and decision of the Circuit Court of Appeals for the Ninth Circuit, given in the year 1923, in the case of In re Ketchikan Delinquent Tax Roll, 293 F. 577, from which the following is quoted:

"Section 627 of the Compiled Laws of the Territory of Alaska of 1913 provides as follows:

"'That the said common council shall have and exercise the following powers: * * * Fourth. To provide for the location, construction, and maintenance of the necessary streets, alleys, crossings, sidewalks, sewers, and wharves. If such street, alley, sidewalk, or sewer, or parts thereof, is located and constructed upon the petition of the owners of two-thirds in value of the property abutting upon and affected by such improvement, then two-thirds of the cost of the same may, in the discretion of the council, be collected by the assessment and levy of a tax against the abutting

property, and such tax shall be a lien upon the same and may be collected as other real estate taxes are collected.'

"Section 628 provides:

" 'The common council may exercise their powers by ordinance or resolution, but no ordinance or resolution shall be valid unless adopted by a vote of four members of the council, at a meeting where not less than five members are present.'

"On the 5th day of October, 1920, a petition was presented to the common council of the city of Ketchikan, praying for the construction of a certain roadway and sidewalk and the establishment of a right of way therefor; the petitioners agreeing to pay their proportionate share of two-thirds of the cost of the improvement, and that the same be a specific lien upon their respective properties abutting on the improvement. The petition was approved and ordered filed upon presentation to the city council, and the city clerk was directed to call for bids for the work at the next regular meeting. So far as the record discloses, no other or further action was taken by the city council until a resolution was adopted on February 2, 1921, assessing two-thirds of the cost of the improvement against certain persons and the lands owned or occupied by them, and declaring the sums so assessed a specific lien upon the lands. On May 20, 1922, the delinquent tax roll for the city for the year 1921 was presented to the court under the provisions of chapter 69 of the Session Laws of Alaska of 1913, for adjustment and order of sale of the property therein described. At the same time there was presented the delinquent assessment roll for the improvement in question. The appellee, Furnivall, filed objections to the assessment and order of sale and after hearing before the court the objections were sustained. From that order the present appeal is prosecuted.

"In the course of its opinion the court below said:

" 'It being shown clearly that two-thirds of property owners abutting on the proposed Harris street extension had not petitioned therefor, this is jurisdictional, and, as to the nonconsenting owners, the whole proceedings are illegal.'

"(1) But the court made no further finding upon that issue. The court further held, however, that inasmuch as the improvement and assessment against the abutting property was not provided for by ordinance or resolution, the whole proceeding was void, and upon this latter ground we are of opinion that the judgment of the court below should be affirmed. The power to locate, construct, and maintain streets, and more especially the power to impose a tax upon abutting property owners, is a legislative one, and can only be exercised by ordinance or resolution. 28 Cyc. 992; Chicago & N. P. R. Co. v. City of Chicago, 174 Ill. 439, 51 N.E. 596; Eckert v. Incorporated Town of Walnut, 117 Iowa 629, 91 N.W. 929; Zalesky v. Cedar Rapids, 118 Iowa, 714, 92 N.W. 657; McQuillin's Municipal Corporations, p. 1334.

"(2) Furthermore, under the Alaska statute, the discretion to levy a tax upon abutting property to pay two-thirds of the cost of an improvement must be exercised when the petition for the improvement is heard, and before, or at the time, the improvement is ordered. Most assuredly one city council cannot make an improvement, and some other city council, at some later day, exercise the discretion to impose a part of the burden upon abutting property owners.

"The assessment is therefore void, and the judgment is affirmed."

■ The force of the opinion above quoted is not materially weakened by the fact that the assessment there made was under a statute which has since been repealed. This Court is nevertheless bound by the ruling that the steps must be followed in the order provided in the statute without substantial deviation, and that one council is not permitted by ratification to validate in such a matter the acts of a previous council.

■ The question of estoppel also is here presented. The plaintiffs made no protest concerning the construction and appeared at the hearing urging only that the cost

of the work be paid out of the general funds of the City and not paid in part by special assessments. The elements of equitable estoppel are well stated in the case of Schmidt et al. v. Village of Deer Park, 1947, 81 Ohio App. 417, 78 N.E.2d 72, 74, cited and quoted in defendants' brief, as follows: "Active participation in causing the improvement to be made will estop the party engaged therein from denying the validity of the assessment; but to create an estoppel from silence merely, it must be shown that the owner had knowledge: 1. That the improvement was being made; 2. That it was intended to assess the cost thereof, or some part of it, upon his property; 3. That the infirmity or defect in the proceedings existed which he is to be estopped from asserting; and 4. It must appear that some special benefit accrued to his property from such improvement which it is inequitable, under the circumstances, he should enjoy without compensation." Substantially the same rules were set forth in Re Ketchikan Delinquent Tax Roll, 1922, 6 Alaska 653, affirmed 9 Cir., 293 F. 577.

■ There is no proof that at the time the work was done the plaintiffs had knowledge that it was intended to assess the cost of the improvements or some part of it upon their property, and therefore I find that estoppel does not operate against the plaintiffs in this case.

Counsel for defendants assert that a decision in favor of the City would not run counter to the due process provisions of the Constitution because under Sec. 16–1–85, ACLA, the plaintiffs were heard to present their objections to the assessment. But if the provisions of Section 16–1–82 are mandatory, full compliance with due process otherwise is not sufficient, under the decision of the Court of Appeals in the Ketchikan case, to validate the assessment.

■ There is question whether in a case of such consequence, a summary judgment is proper. 8 Cyclopedia Fed. Procedure 215; Kennedy v. Silas Mason Co., 1947, 334 U.S. 249, 68 S.Ct. 1031, 92 L.Ed. 1347; Eccles v. Peoples' Bank, 1947, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784, but since it appears that all of the facts are fully stated in the record, and no further facts could be gained by trial, and since both parties ask for summary judgment, it is appropriate that the case be decided on the motions.

Following the authority of the Ketchikan case, the motion for summary judgment in favor of the plaintiffs and against the defendants is granted.